Revised November 17, 1998

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 98-40148**

---

**UNITED STATES OF AMERICA,**

**Plaintiff - Appellee,**

**VERSUS**

**EDDIE EUGENE NORRIS,**

**Defendant - Appellant.**

---

Appeal from the United States District Court
for the Southern District of Texas

---

October 29, 1998

Before REYNALDO G. GARZA, JONES, and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Eddie Eugene Norris pleaded guilty to ten counts of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). He was sentenced to a 78-month prison term. He appeals from that sentence on the theory that his ten counts of conviction should have been grouped pursuant to U.S.S.G. § 3D1.2(b) because each offense involved the same "victim" (namely, society as a whole), and

therefore involved substantially the same harm.  We disagree, and therefore affirm.

## I.

Norris took his computer to a shop in Corpus Christi, Texas, for the purpose of having the hard drive repaired.  The employee who performed the repairs noticed that the filenames of several documents stored in the computer's hard drive contained sexually explicit words.  Upon opening several of these files, the employee discovered that the files contained explicit images of children engaged in sexual conduct.  Local law enforcement and the United States Customs Service were notified, the contents of the hard drive were examined, and Norris was arrested following a "controlled delivery" of his computer.

Norris was indicted on ten counts of "knowingly receiv[ing] a visual depiction, the producing of which involved the use of a minor engaging in sexually explicit conduct . . . which visual depiction had been transported and shipped in interstate and foreign commerce," in violation of 18 U.S.C. § 2252(a)(2), and one count of "knowingly possess[ing] three (3) or more visual depictions, the producing of which invoked the use of a minor engaging in sexually explicit conduct, which visual depictions are of such conduct," in violation of 18 U.S.C. § 2252(a)(4)(B).  He pleaded guilty to the ten counts of receiving child pornography,

and the one count of possessing child pornography was dismissed on the government's motion, pursuant to a plea agreement. The district court accepted Norris's guilty plea and scheduled a sentencing hearing.

The sentencing recommendation of the presentence investigation report originally prepared for Norris by a United States Probation Officer recommended a total offense level of 18 and criminal history category of I, which together carry an imprisonment range of 27 to 33 months.[1] This recommendation reflected a base offense level of 17 for ten grouped counts of receiving child pornography in violation of 18 U.S.C. § 2522(a)(2) (U.S.S.G. §§ 2G2.2(a), 3D1.2(b)),[2] two specific offense characteristic increases of two

---

[1] The United States Sentencing Commission *Guidelines Manual* in effect on the date of sentencing is used to calculate a defendant's sentence. *See* U.S.S.G. § 1B1.11(a) (Nov. 1997). The district court imposed judgment on Norris on December 4, 1997, and the judgment was entered on December 9, 1997. Accordingly, the sentencing issues in this case are governed by the *Guidelines Manual* incorporating guideline amendments effective November 1, 1997. All sentencing guidelines references in this opinion refer to the November 1997 edition, though the presentence investigation report indicates that it was based on the 1995 edition.

[2] As a justification for the grouping recommendation, the presentence investigation report stated:

> Individual grouping would be appropriate if each picture actually victimized the minors in the visual depictions. . . . [T]he adult participants in the visual depictions, the photographers, and the individuals who have made financial profit from such items are the ones who victimize the minors. This defendant is apparently more of a passive viewer of the depictions and his actions do not serve to perpetrate the crimes as much as the other

levels each for involvement of material involving prepubescent minors (U.S.S.G. § 2G2.2(b)(1)) and use of a computer for transmission (U.S.S.G. § 2G2.2(b)(5)), and downward adjustments of two levels for acceptance of responsibility (U.S.S.G. § 3E1.1(a)) and one level for timely notification to the government of intent to plead guilty (U.S.S.G. § 3E1.1(b)(2)).

The parties filed no objections to this recommendation, but an addendum to the presentence investigation report and a revised sentencing recommendation were filed by the probation office in response to a request by the district court. The new report and recommendation contained two changes. An additional four-level increase was suggested because the pornographic items received by Norris depicted acts of violence (U.S.S.G. § 2G2.2(b)(3)), and, rescinding the previous grouping analysis,[3] a five-level increase was recommended to account for the multiple counts of conviction (U.S.S.G. § 3D1.4). The new recommendation thus suggested a total offense level of 27, which carries an imprisonment range of 70 to 87 months for a criminal history category of I.

Norris objected to the failure to group the counts for sentencing purposes, but the objection was overruled. Adopting the presentence investigation report, the district court assigned a

_____

participants.

[3] The addendum stated that the counts of receiving child pornography should not be grouped because "these offenses involved separate minors."

-4-

total offense level of 27, a criminal history category of I, and a sentence of 78 months of imprisonment. Norris timely appeals from the district court's calculation of his sentence.

## II.

Norris contends that the district court erred by refusing to group his offenses under U.S.S.G. § 3D1.2. That section provides, in pertinent part:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
> * * *
>
> (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan.

U.S.S.G. § 3D1.2(b). The commentary to this guideline states that:

> The term "victim" is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (*e.g.*, drug or immigration offenses, where society at large is the victim), the "victim" for purposes of subsections (a) and (b) is the societal interest that is harmed. In such cases, the counts are grouped together when the societal interests that are harmed are closely related. . . . Ambiguities should be resolved in accordance with the purpose of this section as stated in the lead paragraph, *i.e.*, to identify and group "counts involving substantially the same harm."

U.S.S.G. § 3D1.2 cmt. 2. This commentary "must be given controlling weight unless it is plainly erroneous or inconsistent" with the text of § 3D1.2. *Stinson v. United States*, 508 U.S. 36, 45, 113 S. Ct. 1913, 1919 (1993) (internal quotation marks omitted).

Analogizing to the commentary's example of drug offenses, Norris contends that his receipt of child pornography is a victimless crime. According to Norris, society at large is therefore the "victim" for the purposes of the grouping rule, and because each time he received child pornography that same societal interest was harmed, the counts should be grouped. In addition, to the extent that the children portrayed in the pictures received by Norris may be considered to be victims of his crimes, he contends that they are indirect or secondary victims of his actions of the sort not contemplated by § 3D1.2.

## A.

The issue of whether the district court correctly interpreted the sentencing guidelines to permit the children depicted in child pornography to be considered the victims of the crime of receiving child pornography for the purposes of the guidelines' grouping rule is a question of law which we review de novo. *See United States v. Hibbler*, Nos. 96-2345 & 96-2450, 1998 WL 729540, at *2 (6th Cir. Oct. 21, 1998), *United States v. Boos*, 127 F.3d 1207, 1209 (9th

Cir. 1997), *cert. denied*, 118 S. Ct. 734 (1998); **United States v. Ketcham**, 80 F.3d 789, 792 (3d Cir. 1996); **United States v. Rugh**, 968 F.2d 750, 755 (8th Cir. 1992); **United States v. Toler**, 901 F.2d 399, 402 (4th Cir. 1990). In reviewing the district court's findings of fact and application of the guidelines to the specific facts of a case, we review for clear error. *See, e.g.*, **United States v. Powell**, 124 F.3d 655, 663 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 1518 (1998).

**B.**

The question of whether multiple children depicted in multiple pornographic images may be treated as different "victims" for sentencing purposes is not novel -- it has been considered by five other circuits. *See* **Hibbler**, 1998 WL 729540, at *2-*4 (yes); **Boos**, 127 F.3d at 1209-13 (yes); **Ketcham**, 80 F.3d at 792-93 (yes); **Rugh**, 968 F.2d at 754-56 (yes); *cf.* **Toler**, 901 F.2d at 402-03 (no -- the depicted minor is the primary "victim" for the purposes of 18 U.S.C. § 2423 (interstate transportation of a minor with intent that the minor engage in prohibited sexual conduct), but not under 18 U.S.C. § 2252(a) (interstate transportation of child pornography)). We agree with those circuits which have decided that the children depicted in child pornography may be considered to be the victims of the crime of receiving child pornography.

**1.**

Just as in the case of interpreting a statute, when interpreting a provision of the sentencing guidelines our starting point is the text of that provision. *Cf., e.g.*, ***Hightower v. Texas Hosp. Ass'n***, 65 F.3d 443, 448 (5th Cir. 1995) ("When courts interpret statutes, the initial inquiry is the language of the statute itself."). We must look first, then, to the text of U.S.S.G. § 3D1.2 and the plain meaning of the word "victim." Section 3D1.2(b) permits the grouping of counts which "involve the same victim." A "victim" in this sense is "anyone who suffers either as a result of ruthless design or incidentally or accidentally." *Webster's Third New International Dictionary* 2550 (1971).

Norris argues that when he committed the crime of receiving child pornography, the children depicted were not "victimized" by that act, and therefore were not "victims" for sentencing purposes. Under this theory the victimization of the children occurred at the time the pornographic images were produced. Therefore, according to Norris, the criminal act of simply receiving child pornography is a victimless crime, and the children depicted in the child pornography can only be victims of the crime of receiving child pornography in an indirect or secondary sense.

Norris takes an unrealistically narrow view of the scope of harms experienced by the child victims of the child pornography

industry. Unfortunately, the "victimization" of the children involved does not end when the pornographer's camera is put away. The consumer, or end recipient, of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions in at least three ways.

*First*, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. "[T]he materials produced are a permanent record of the children's participation and *the harm to the child is exacerbated by their circulation*." **New York v. Ferber**, 458 U.S. 747, 759, 102 S. Ct. 3348, 3355 (1982) (emphasis supplied); *see also* Child Pornography Prevention Act of 1996, Pub. L. 104-208, sec. 121, 110 Stat. 3009-26, *reprinted in* 18 U.S.C. § 2251 note at 611 (Supp. II 1996) (hereinafter, 1996 Act) ("Congress finds that . . . where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years . . . ."); **Osborne v. Ohio**, 495 U.S. 103, 111, 110 S. Ct. 1691, 1697 (1990) ("The pornography's continued existence causes the child victims continuing harm by haunting the children for years to come."). The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization.

*Second*, the mere existence of child pornography represents an invasion of the privacy of the child depicted. Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent. *See **Ferber***, 456 U.S. at 759 n.10, 102 S. Ct. at 3356 n.10 ("[D]istribution of the material violates 'the individual interest in avoiding disclosure of personal matters.'" (quoting ***Whalen v. Roe***, 429 U.S. 589, 599, 97 S. Ct. 869, 876 (1977))); 1996 Act, 110 Stat. at 3009-26 ("Congress finds that . . . the creation or distribution of child pornography . . . invades the child's privacy and reputational interests . . . ."). The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.

*Third*, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials. *See **Osborne***, 495 U.S. at 109-12, 110 S. Ct. at 1696-97; ***Ferber***, 458 U.S. at 3355-56. As Congress put it in explicit factual findings:

> [T]he existence of and traffic in child pornographic images . . .
>
> . . . inflames the desires of child molesters, pedophiles, and child pornographers, thereby increasing the creation and distribution of child

-10-

> pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials[.]

1996 Act, sec. 121, 110 Stat. at 3009-27. Plainly, Congress has described a chicken-and-egg scenario in which it would be impossible to determine whether child pornographers or consumers of child pornography were initially responsible for the creation of the child pornography industry. The underlying point, however, is that there is no sense in distinguishing, as Norris has done, between the producers and the consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

Any of these effects, stemming directly from a consumer's receipt of or willingness to receive child pornography, would amply justify the conclusion that a child depicted in the pornographic images was a "victim" of that crime. We therefore disagree with Norris's suggestion the nature of the offense he committed requires that his counts of receiving child pornography be grouped as a matter of law. We reject the suggestion that the commentary's references to victimless crimes and "indirect or secondary victims" compels the conclusion that the crimes of a "passive" child pornography recipient must be grouped because the resulting harm is somehow attenuated as compared to a person who actually produces or

distributes child pornography. As we have explained, the victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography.[4]

**2.**

Our conclusion that a child depicted in child pornography may be the victim of the crime of receiving child pornography is supported by the titles of the legislative acts which created 18

---

[4] We note in passing the unique posture of the receipt offense in the sentencing scheme as compared to other child pornography offenses. Norris was convicted and sentenced for receiving child pornography, which is grouped with the offenses of trafficking, shipping, advertising, or possessing with intent to traffic. *See* U.S.S.G. § 2G2.2. Sentencing under this provision results in a greater base offense level than does conviction and sentencing for the offense of possessing child pornography. *Compare **id**.* (base offense level of 17 for receiving child pornography), *with* U.S.S.G. § 2G2.4 (base offense level of 15 for possessing child pornography). Arguably, there is no meaningful distinction between the offenses of receiving and possessing child pornography, and the different base offense levels for those offenses are, therefore, difficult to reconcile. This problem has not escaped the notice of the Sentencing Commission. *See* U.S. Sentencing Comm'n, *Report to Congress: Sex Offenses Against Children: Findings and Recommendations Regarding Federal Penalties* 41-42 (1996), *available in* U.S. Sentencing Comm'n, *Report to Congress - Sex Offenses Against Children* (visited Oct. 26, 1998) <http://www.ussc.gov/scac.pdf>. Congress, however, has insisted on maintaining the current scheme. *See* Treasury, Postal Service and General Government Appropriations Act of 1992, Pub. L. 102-141, § 632, 105 Stat. 834, 876. A prosecutor can therefore manipulate the severity of a sentence by deciding whether to charge the defendant with receiving or possessing child pornography -- a result at apparent odds with the policy goals of the sentencing guidelines.

U.S.C. § 2252 and which amended that statute to criminalize the mere receipt of child pornography, the Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. 95-225, § 2(a), 92 Stat. 7, 7-8, and the Child Protection Act of 1984, Pub. L. 98-292, sec. 4, 98 Stat. 204, 204-05.[5]  "'[T]he title of a statute and the heading of a section' are 'tools available for the resolution of a doubt' about the meaning of a statute." *Almendarez-Torres v. United States*, 118 S. Ct. 1219, 1226 (quoting *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co.*, 331 U.S. 519, 528-29, 67 S. Ct. 1387, 1391-92 (1947)).  These titles leave no doubt whatsoever about the intentions of Congress in criminalizing the receipt of child pornography.[6]  The titles of the acts show that the focus of

---

[5]  The same theme is also reflected in the titles and legislative findings of later statutes amending 18 U.S.C. § 2252, such as the Child Abuse Victims' Rights Act of 1986, Pub. L. 99-500, sec. 704(b), 100 Stat. 1783-74, 1783-75, the Child Protection and Obscenity Enforcement Act of 1988, Pub. L. 100-690, sec. 7511(b), 102 Stat. 4485, 4485, and the Child Protection Restoration and Penalties Enhancement Act of 1990, Pub. L. 101-647, sec. 323, 104 Stat. 4816, 4818-19.

[6]  Significantly, we cannot place our whole reliance on the original enactment of 18 U.S.C. § 2252, as did our sister circuits in *Boos* and *Ketcham*.  The prohibition against the receipt of child pornography contained in 18 U.S.C. § 2252(a)(2) began as a prohibition of "knowingly receiv[ing] *for the purpose of sale or distribution* . . . any obscene visual or print medium" depicting child pornography.  Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. 95-225, § 2(a), 92 Stat. 7, 7-8 (emphasis supplied).  The Child Protection Act of 1984 amended this provision in two significant respects, eliminating both the "purpose of sale or distribution" and obscenity restrictions.  *See* Child Protection Act of 1984, Pub. L. 98-292, sec. 4, 98 Stat. 204, 204-05.  The crime committed by Norris, receiving child pornography, was not a crime under the 1977 legislation because the

Congress was on protecting children, not, as Norris would have it, a general concern for society as a whole. We would stand the statute on its head to conclude otherwise. *See* **Boos**, 127 F.3d at 1213; **Ketcham**, 80 F.3d at 793.

## C.

We have concluded that the sentencing guidelines do not preclude, as a matter of law, children depicted in child pornography from being characterized as victims of the crime of receiving child pornography for the purposes of the grouping provision. We now turn to the task of reviewing the district court's determination that the children depicted in the images received by Norris were the victims of his crime. Norris identifies no facts which would indicate that the children depicted were not victims of Norris's crime, and our independent review of the record reveals no clear error.

## III.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

record does not suggest that he had a "purpose of sale or distribution." It is, therefore, important that we also take into consideration the 1984 amendment which eliminated that element of the offense. The defendants in both **Boos** and **Ketcham** were convicted, inter alia, on counts of distributing child pornography, which was covered by the original 1977 legislation.