**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 99-40982
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BOYD WILLIAM LYCKMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas
_____

December 7, 2000

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Appellant-Defendant Lyckman, a former Texas high school coach and teacher, pleaded guilty to three counts of distributing or receiving child pornography. Lyckman challenges the district court's enhancement of his sentence for offenses involving (1) material that depicts sadistic, masochistic, or other violent conduct, and (2) the distribution of child pornography. Lyckman also objects to the district court's refusal to "group" his counts of conviction. Finding no error, we affirm.

I.

*Facts and Proceedings*

Lyckman came to the attention of authorities when the parents of a 15-year-old Corpus Christi girl whom he had contacted in a computer "chat room" complained to the police. Following this episode, police officers went to Lyckman's residence, where he consented to a search of his computer and his house. Child pornography was found on the hard drive of Lyckman's computer. Through America Online, Lyckman's internet service provider, investigators discovered that Lyckman had transmitted by computer a photographic image of a 12-year-old girl being sexually assaulted by an adult. Investigators also found in Lyckman's computer two images of prepubescent girls having sex with adult males. More specifically, each of the three images depicts the male sexual organ partially inserted into the sexual organ of a prepubescent female.

Lyckman was indicted with two counts of distributing child pornography involving the sexual exploitation of minors and five counts of receiving such material. Pursuant to a written agreement, Lyckman pleaded guilty to one count of distributing child pornography and two counts of receiving the same. The government agreed to recommend that Lyckman be given a Sentencing Guidelines reduction for acceptance of responsibility and that he be sentenced at the lowest end of the applicable imprisonment range.

Lyckman's presentence report ("PSR") recommended a base

offense level of 17 as to all three counts.[1]  The PSR also recommended the following increases applicable to all three counts: two levels because the material involved a prepubescent minor;[2] five levels because the offense involved distribution;[3] four levels because the material depicted violence;[4] and two levels because a computer was used to transmit the material.[5]  Lyckman's adjusted offense level as to each count was 30; after a multiple-count adjustment of three levels,[6] he was left with a combined adjusted offense level of 33.  Lyckman was entitled to a three-level reduction for acceptance of responsibility,[7] which yielded a net offense level of 30.  This level and his Category I criminal history score resulted in a guideline imprisonment range of 97 to 121 months.

Lyckman made the following objections to the PSR: (1) The increase based on material depicting sadism or violence was not supported by the evidence; (2) the increase for distribution was improper because "distribution" was defined as relating to

_____

[1]See U.S.S.G. § 2G2.2(a).

[2]See id. at § 2G2.2(b)(1).

[3]See id. at § 2G2.2(b)(2).

[4]See id. at § 2G2.2(b)(3).

[5]See id. at § 2G2.2(b)(5).

[6]See id. at § 3D1.4.

[7]See id. at § 3E1.1.

3

"pecuniary gain," whereas he had only traded images with others via the internet; and (3) the three counts to which he pleaded guilty were "closely related" and should have been grouped together.[8]

At the sentencing hearing, the district court overruled in short order most of Lyckman's objections to the PSR.[9] Specifically, the district court concluded that within the meaning of § 2G2.2(b)(3), which applies to material "that portrays sadistic or masochistic conduct or other depictions of violence," the term "violence" encompasses the sexual penetration of a child by an adult. In reaching this conclusion, the district court relied on the testimony of Officer Robert Lee McFarland, a Corpus Christi police officer experienced in the investigation of child pornography on the internet, that a photograph supporting Count One of the indictment depicted the sexual assault of a minor under Texas law and that the child depicted was under the age of 12. Officer McFarland was also of the opinion that the photograph depicted violence done to a child. The district court further concluded that among the photographs supporting Counts Three and Four of the indictment, the images portraying the physical penetration of children by adult males were depictions of violence within the meaning of § 2G2.2(b)(3). The district court sentenced

---

[8]See id. at § 3D1.2.

[9]The district court did agree with the Probation Office that the five-level enhancement for distribution was not appropriate for the receipt offenses, and accordingly reduced Lyckman's guideline imprisonment range to 87 to 108 months.

Lyckman to concurrent 95-month prison terms and three-year terms of supervised release on each of the counts, and fined him $1000. Lyckman now appeals that sentence.

## II.

### *Analysis*

#### A.  *Standard of Review*

Whether the district court correctly interpreted the Sentencing Guidelines is a question of law that we review <u>de</u> <u>novo</u>.[10] We also review <u>de</u> <u>novo</u> the district court's application of the Sentencing Guidelines grouping rule.[11]  The district court's findings of fact and application of the Sentencing Guidelines to the specific facts of the case, however, are reviewed for clear error.[12]

#### B. *Issues*

#### 1. *Enhancement for Offenses Involving Sadistic or Violent Conduct*

Lyckman contends that the district court erred in applying § 2G2.2(b)(3) because the photographs at issue, which depict adult males engaging in vaginal intercourse with prepubescent females, are not "sadistic or violent" within the meaning of the guideline. Neither the Sentencing Guidelines nor this court has defined either "sadistic conduct" or "depictions of violence" within the meaning

---

[10]<u>United States v. Norris</u>, 159 F.3d 926, 929 (5th Cir. 1998).

[11]<u>See</u> <u>Norris</u>, 159 F.3d at 929.

[12]<u>Id.</u>

of § 2G2.2(b)(3). Therefore, we must begin with the text of the guideline and the plain meaning of its terms.[13] In construing these terms, we must give them their ordinary meaning,[14] bearing in mind the important distinction between how a word <u>can</u> be used and how it ordinarily <u>is</u> used.[15] Likewise, we must heed the familiar caveat that "the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used."[16]

Webster's Third New International Dictionary defines "violence" primarily as the "exertion of any physical force so as to injure or abuse."[17] Similarly, Black's Law Dictionary defines "violence" as "[1] [u]njust or unwarranted exercise of force, usually with the accompaniment of vehemence, outrage or fury. . . . [2] Physical force unlawfully exercised; abuse of force; that force which is employed against common right, against the laws, and against public liberty. . . . [3] The exertion of any physical force so as to injure, damage or abuse."[18]

These definitions make clear that the term "violence," as

---

[13]See <u>Norris</u>, 159 F.3d at 929.

[14]See <u>United States v. Chapman</u>, 500 U.S. 453, 461–62 (1991).

[15]See <u>Smith v. United States</u>, 508 U.S. 223, 242 (Scalia, J., dissenting).

[16]See <u>Deal v. United States</u>, 508 U.S. 129, 132 (1993).

[17]Webster's Third New International Dictionary (unabridged) 2554 (1986).

[18]Black's Law Dictionary 1570 (6th ed. 1990).

6

ordinarily used, is not limited to activity involving "whips, chains, beatings . . . brutality or excessive cruelty," as Lyckman would restrict it.  Given the ordinary meaning of "violence" as "the exertion of any physical force so as to injure, damage or abuse," it is difficult to imagine that the sexual penetration of a prepubescent female by an adult male would not qualify as "violence."

We must consider the term "violence" not in isolation, but in the context in which it is used.  The venerable principle of ejusdem generis warns against expansive interpretations of broad language — here, the term "other depictions of violence" — that immediately follows narrow and specific terms — here, the terms "sadistic or masochistic conduct,"[19] and counsels us to construe the broad in light of the narrow.  Therefore, the general term "other depictions of violence" casts its net no wider than necessary to capture images akin to those included by § 2G2.2(b)(3)'s more specific terms.

Although case law interpreting § 2G2.2(b)(3) is sparse, the Second, Seventh, and Eleventh Circuits have all construed the terms "sadistic conduct" and "violence" so that the application of §

---

[19]Webster's defines "sadism" as "the infliction of pain upon a love object as a means of obtaining sexual release," "delight in physical or mental cruelty," and the use of "excessive cruelty." See Webster's Third New International Dictionary (unabridged) 1997-98 (1986).  "Masochism" is defined as "a tendency to gain or increase sexual gratification through the acceptance of physical abuse or humiliation." Id. at 1388.

2G2.2(b)(3) is warranted when the sexual act depicted is "likely to cause pain in one so young."[20]  Although our cases upholding applications of § 2G2.2(b)(3) have all involved pornographic images depicting bondage or the insertion of foreign objects into the body canals of a child,[21] such images hardly exhaust the malevolent universe of sexual violence against children.  As the government notes, the sexual penetration of a young girl by an adult male is certainly no less painful, either physically or emotionally, to such a young child than the insertion of a foreign object.[22]  That

---

[20]See United States v. Delmarle, 99 F.3d 80, 83 (2d Cir. 1996) (holding that photograph of nude boy approximately 8-9 years of age having an object inserted in his anus warranted the application of § 2G2.2(b)(3), on the ground that "subjection of a young child to a sexual act that would have to be painful is excessively cruel and hence is sadistic" within the meaning of § 2G2.2(b)(3)); United States v. Turchen, 187 F.3d 735, 738-40 (7th Cir. 1999)(holding that photograph depicting two adult males and a nude prepubescent male standing over a female child while urinating on her face as she grimaced warranted the application of § 2G2.2(b)(3) as a depiction of sadistic and masochistic conduct); United States v. Garrett, 190 F.3d 1220, 1223-24 (11th Cir. 1999) (holding that photographs involving children between eight and eleven years of age being penetrated vaginally and anally by adult males, including a photograph depicting an 11 year old girl with a glass soda bottle inserted in her vagina, portrayed acts that "would necessarily have been painful to the young children involved" and therefore justified the application of § 2G2.2(b)(3)).

[21]See, e.g., United States v. Canada, 110 F.3d 260, 264 (5th Cir. 1997) (involving photographs portraying anal and vaginal penetration of children through the use of sexual devices); United States v. Kimbrough, 69 F.3d 723, 733 (5th Cir. 1995) (involving computer images of a child in bondage).

[22]Lyckman attempts to distinguish Garrett, in which the Eleventh Circuit held that photographs of children between eight and eleven years of age being penetrated vaginally by adult males justified the application of § 2G2.2(b)(3), on the basis of the lack of medical testimony or evidence in the instant case that

8

being so, it was certainly reasonable for the district court to infer that the conduct depicted by the photographs caused the children pain, physical or emotional or both, and therefore constitutes sadism or violence within the meaning of the guideline.

This conclusion draws additional support from cases that hold indecency with a child by sexual contact and sexual abuse of a child to be crimes of violence within the meaning of 18 U.S.C. § 16.[23]  In <u>United States v. Velazquez-Overa</u>,[24] for example, we reasoned that when an adult attempts sexual contact with a child, such conduct is "inherently violent because the threat of violence is implicit in the size, age, and authority position of the adult in dealing with such a young and helpless child."[25]  Similarly, in

---

vaginal intercourse with an adult male would be painful to a prepubescent female.  One hardly requires a medical degree to ascertain that vaginal intercourse with an adult male would involve pain, both physical and emotional, for a young girl.

[23]18 U.S.C. § 16 defines a crime of violence as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  See <u>United States v. Velazquez-Overa</u>, 100 F.3d 418, 422 (5th Cir. 1996) (holding categorically that indecency with a child involving sexual conduct is a crime of violence within the meaning of 18 U.S.C. § 16(b); <u>see</u> <u>also</u> <u>United States v. Reyes-Castro</u>, 13 F.3d 377, 379 (10th Cir. 1993) (holding that the sexual abuse of a child is a crime of violence under 18 U.S.C. § 16(b)).

[24]100 F.3d 418 (5th Cir. 1996).

[25]<u>Id.</u> at 422 (quotations omitted).

United States v. Reyes-Castro,[26] the Tenth Circuit concluded that because attempted sexual abuse of a child involves a non-consensual act upon another person, there is always a substantial risk that physical force will be used to ensure the child's compliance.[27] Although the mere _risk_ of violence is sufficient to trigger 18 U.S.C. § 16, whereas § 2G2.2(b)(3) requires actual "sadistic conduct" or "depictions of violence," these cases nevertheless bolster our conclusion that when a pornographic image depicts an adult male engaging in sexual intercourse with a young girl, the conduct portrayed is sufficiently painful, coercive, abusive, and degrading to qualify as sadistic or violent within the meaning of § 2G2.2(b)(3).

Lyckman contends, however, that "[i]f child pornography was per se sadistic [or] violent, then the enhancement would always apply." This argument is easily debunked because it obviously ignores that child pornography may involve merely "pictures of a [naked] child," as the district court correctly observed, without physical sexual contact.[28]

Equally feckless is Lyckman's argument that the district

---

[26]13 F.3d 377 (10th Cir. 1993).

[27]_Id._ at 379; _see_ _also_ United States v. Bauer, 990 F.2d 373 (8th Cir. 1993) (holding that statutory rape is a crime of violence).

[28]_See_ 18 U.S.C. § 2256(2)(E) (stating that "sexually explicit conduct" may consist of "lascivious exhibition of the genitals or pubic area of any person").

10

court's application of § 2G2.2(b)(3) impermissibly constitutes "double counting" because the victim's prepubescence was already taken into account by the enhancement of his sentence under § 2G2.2(b)(1). Lyckman was convicted under a statute criminalizing the distribution, by any means, including computer, of materials depicting minors engaged in sexually explicit conduct, including "lascivious exhibition of the genitals or pubic area."[29] A pornographic image of a prepubescent minor engaged solely in lascivious exhibition of the genitals would be subject to enhancement under § 2G2.2(b)(1), which provides for a sentencing increase if the offense involved a prepubescent minor under the age of twelve, but would not come within the ambit of § 2G2.2(b)(3)'s provision for sadistic or violent conduct. The district court could therefore consider the factor of the child's prepubescence in assessing the sadistic or violent quality of the images without rendering § 2G2.2(b)(1) superfluous. Moreover, the district court clearly relied on more than the prepubescence of the victims in making its determinations. In limiting its finding to those images that depicted sexual penetration, the district court stated that not all of the photographs of the prepubescent children depicted violence.

We are comfortable in following the lead of the Second, Seventh, and Eleventh Circuits by holding that the application of

---

[29] See id. at § 2252(a)(2)(B) and 2256(2)(E).

11

§ 2G2.2(b)(3) is warranted when the sexual act depicted is the physical penetration of a young child by an adult male. Such conduct is not only "reprehensible," as even Lyckman concedes, but also sufficiently likely to cause pain and injury so as to qualify as "sadistic" or "violent" for purposes of the guideline. Consequently, we find that the district court correctly applied § 2G2.2(b)(3) to enhance Lyckman's sentence on the basis of the particular pornographic images at issue in this appeal.

*2. Enhancement for Distribution*

Lyckman next contends that the district court misapplied the Sentencing Guidelines by enhancing his sentence on the ground that the offense involved the "distribution" of child pornography.[30] Lyckman stresses that he was not paid for any of the pornographic images that he sent to others over the internet, but admits that he "traded" such images.

Lyckman's argument is foreclosed by our decision in United States v. Canada,[31] in which we held that "distribution" is not limited to transactions entered into for pecuniary gain.[32] In Canada, we concluded that "the definition of 'distribution' for the sake of the guideline is meant to be inclusive of pecuniary gain

---

[30]See 1995 U.S.S.G. § 2G2.2(b)(2).

[31]110 F.3d 260 (5th Cir. 1997).

[32]See id. at 263.

12

purposes, but not exclusive of all other purposes."[33] Accordingly, Lyckman's "trading" of pornographic images falls within the ambit of "distribution" as we defined that term in Canada. Furthermore, even those courts that have defined "distribution" to require "pecuniary gain" have recognized that "pecuniary gain" is itself an elastic concept and does not exclude the possibility of swaps, barter, and in-kind transactions.[34] We therefore find the district court's application of § 2G2.2(b)(2) to enhance Lyckman's sentence eminently correct.

*3. Refusal to Group Counts of Conviction*

Lyckman also contends that the district court erred by refusing to group his three convictions pursuant to U.S.S.G. § 3D1.2(b), which provides that when a defendant has been convicted of more than one count, the district court must group all counts that involve the same victim and the same act or transaction. The district court concluded that each child depicted was a "victim" for purposes of § 3D1.2(b), so the grouping rule does not apply.

Lyckman implicitly acknowledges that we are bound by our holding in Norris that the grouping rule does not apply to offenses involving child pornography because the victim of child pornography

---

[33]See id.

[34]See, e.g., United States v. Laney, 189 F.3d 954, 959-61 (9th Cir. 1999); United States v. Black, 116 F.3d 198, 202-203 (7th Cir. 1997).

13

is the individual child rather than society at large.[35] Consequently, we find appropriate the district court's refusal to group Lyckman's counts of conviction.

III.

*Conclusion*

For the reasons explained above, we find proper the district court's application of § 2G2.2(b)(3) and § 2G2.2(b)(2) to enhance Lyckman's sentence. Likewise, we find proper the district court's refusal to group Lyckman's counts of conviction pursuant to § 3D1.2(b). Consequently, his sentence is

AFFIRMED.

---

[35]See Norris, 159 F.3d at 931.