**UNITED STATES of America,**
**Plaintiff,**

v.

**Louis J. SOLSBURY, Defendant.**

**Case No. 4:09–cr–062.**

United States District Court,
D. North Dakota,
Northwestern Division.

Aug. 4, 2010.

Gary L. Delorme, U.S. Attorney's Office, Bismarck, ND, Shon Hastings, U.S. Attorney's Office, Fargo, ND, for Plaintiff.

William Delaney Schmidt, Federal Public Defender Office, Bismarck, ND, for Defendant.

## ORDER ON RESTITUTION

DANIEL L. HOVLAND, District Judge.

The matter before the Court is the issue of whether the defendant, Louis J. Solsbury, should be ordered to pay restitution. On April 26, 2010, Solsbury pled guilty to the receipt of materials involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). *See* Docket No. 30. On June 16, 2010, the Government moved for a restitution order on behalf of an individual who was portrayed in a series of pornographic materials known as the "Vicky" series. *See* Docket No. 37. Included in the images of child pornography that Solsbury had knowingly received were visual depictions of "Vicky." The Government contends that restitution is mandatory and has requested an award of restitution in the amount of $312,953.60. The issue of restitution in child pornography cases is one of first impression in this Court. As a result,

the Court severed the restitution issue from the sentencing proceeding and afforded the parties an opportunity to submit briefs. The parties have each submitted briefs (*see* Docket Nos. 41–42), and oral argument was held on August 2, 2010. For the reasons set forth in the order, the request for restitution is **DENIED**.

## I. *LEGAL DISCUSSION*

The Violent Crime Control and Law Enforcement Act of 1994, and the Violence Against Women Act of 1994, were the first statutes to expressly make restitution mandatory for a few specified offenses, including sexual abuse, sexual exploitation, and domestic violence. *See* 18 U.S.C. §§ 2248, 2259, 2264 (2006). 18 U.S.C. § 2259, the "mandatory" restitution statute applicable to the offense of conviction in this case, provides that the court shall order restitution for any offense under the statutes criminalizing the sexual exploitation and abuse of children. Since this statute was enacted, courts have confirmed the mandatory nature of restitution for crimes included in Chapter 110 of the United States Code titled "Sexual Exploitation and Other Abuse of Children." *See United States v. Searle*, 65 Fed.Appx. 343, 346 (2d Cir.2003) ("18 U.S.C. § 2259 provides that a person convicted of sexual exploitation must pay restitution"); *United States v. Julian*, 242 F.3d 1245, 1246–47 (10th Cir.2001) ("Section 2259(b) provides for mandatory restitution of 'the full amount of the victim's losses . . .'"); *United States v. Laney*, 189 F.3d 954, 964–65 (9th Cir.1999) (noting that § 2259 "requires a sentencing court to order a defendant convicted of a crime involving the sexual exploitation of children to pay restitution to the victim of that crime."); *United States v. Croxford*, 324 F.Supp.2d 1230, 1249 n. 101 (D.Utah 2004) (noting that the court "'shall order'" restitution for offenses under Chapter 110, in a case in

which defendant was convicted of sexual exploitation of a child under 18 U.S.C. § 2251(a)); *United States v. Crandon,* 173 F.3d 122, 125–26 (3d Cir.1999) (noting that restitution is mandatory under § 2259).

Historically, most courts imposed restitution under 18 U.S.C. § 2259 in cases where the defendant sexually abused the child victim and/or participated in the production of child pornography in which the child victim was depicted. However, 18 U.S.C. § 2259 applies to all of the offenses in Chapter 110 regardless of whether a defendant personally participated in the sexual abuse, production, and initial distribution of child pornography. As a matter of law, restitution is mandatory in cases involving the access, receipt, possession and/or distribution of images depicting the sexual abuse of minors. *See* 18 U.S.C. §§ 2252(a)(2), (a)(4), (b)(1), (b)(2); 2259(a) (2006).

Until recently, child pornography victims had not sought restitution in criminal cases where a defendant was convicted of accessing, distributing, receiving, or possessing these images. "Vicky" is among the first victims to make such a claim. Until 2009, there were few examples of decisions where courts ordered restitution in cases like this, where the defendant was convicted of receipt of images depicting the sexual abuse of minors. Since February 2009, federal defendants have been ordered to pay restitution to the victims of receipt, possession and/or distribution of child pornography in more than eighty cases. *United States v. Freeman,* No. 3:08–cr–22–002 (N.D.Fla. July 9, 2009) (ordering defendant to pay $3.2 million in restitution to a child exploitation victim in a case where the defendant, who did not participate in the physical abuse of the victim or the production of images depicting the victim, possessed sexual exploitation images of the victim as a child); *United States v. Staples,* No. 2:09–cr–14017, 2009 WL 2827204 (S.D.Fla. Sept. 2, 2009) (ordering the defendant, who was convicted of possession of child pornography, to pay $3,543,471.00 in restitution to a victim: $3,067,671.00 for the loss of future wages and employee benefits and $475,800.00 for future treatment and counseling costs); *United States v. Trantham,* No. 09–cr–027 (N.D.Tex. Jan. 26, 2010) (ordering the defendant, who was convicted of attempted receipt and transporting and possession of child pornography, to pay $219,546.10 in restitution to "Vicky").

## A. *"VICKY" IS A VICTIM.*

The harm to children depicted in child pornography was first recognized decades ago in *New York v. Ferber,* 458 U.S. 747, 758, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). In *Ferber,* the United States Supreme Court noted that, in the judgment of state and federal legislators and authors of relevant literature, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Ferber,* 458 U.S. at 758, 102 S.Ct. 3348 (citations omitted). Specifically, "sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions and have a tendency to become sexual abusers as adults. Sexual molestation by adults is often involved in the production of child sexual performances. When such performances are recorded and distributed, the child's privacy interests are also invaded." *Ferber,* 458 U.S. at 758 n. 9, 102 S.Ct. 3348 (citations omitted).

The Supreme Court in *Ferber* also observed that the "materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* at 759, 102 S.Ct. 3348 (citation omitted).

'[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.' ... '[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.' *Id.* at 759 & n. 10, 102 S.Ct. 3348 (citations omitted). *See Osborne v. Ohio*, 495 U.S. 103, 109–10, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (re-affirming *Ferber* in a case involving possession of child pornography). Twenty-three years later, the Supreme Court again acknowledged the harm to victims depicted in child pornography and observed that a new harm is caused each time the images are shared with someone different. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002) (noting that "as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being").

The cases in which Courts of Appeals have considered the Sentencing Guidelines grouping rules in child pornography cases are also instructive in assessing the harm to victims depicted in child pornography. The Fifth Circuit in *United States v. Norris*, 159 F.3d 926, 929–30 (5th Cir.1998), is among the most comprehensive. Rejecting defendant's arguments that "simply receiving child pornography is a victimless crime," and "the children depicted in child pornography can only be victims of the crime of receiving child pornography in an indirect or secondary sense," the court in

*Norris* noted that the "'victimization' of the children involved does not end when the pornographer's camera is put away." *Id.* at 929. The consumer, or end recipient, of pornographic materials causes the children depicted in those materials to suffer as a result of his actions in at least three ways:

> *First,* the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. "[T]he materials produced are a permanent record of the children's participation and the *harm to the child is exacerbated by their circulation.*" The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization.

> *Second,* the mere existence of child pornography represents an invasion of the privacy of the child depicted. Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent. The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.

> *Third,* the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials.... [T]here is no sense in distinguishing, as Norris has done, between the producers and the consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous

direct abuse and victimization of child subjects.

*Id.* at 929–930 (internal citations and quotations omitted) (emphasis in original).

In addition to case law, the legislative history of the statutes in Chapter 110 acknowledges the harm to victims caused by possessors, receivers and/or distributors of child pornography, and confirms that Congress understood the primary victim of child exploitation crimes is the child depicted in the pornography. Recently, Congress found that:

> ... the illegal production, transportation, distribution, receipt, advertising and possession of child pornography, as defined in section 2256(8) of title 18, United States Code ... is harmful to the physiological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole ... Every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse.

Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109–248, § 501(1)(A), (2)(D), 120 Stat. 587, 623–24 (July 27, 2006); *see also,* Effective Child Pornography Prosecution Act, Pub.L. No. 110–358, § 102(3), 122 Stat. 4001 (Oct. 8, 2008) ("Child pornography is a permanent record of a child's abuse and the distribution of child pornography images revictimizes the child each time the image is viewed.").

In 1996, Congress observed: "Where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years." Child Pornography Prevention Act of 1996, Pub. L. No. 104–208, Div. A, tit. I, § 121, subsec. 1(2), 110 Stat. 3009–26 (Sept. 30, 2006).

The Court's first task is to determine whether Vicky is a victim of Solsbury's offense. 18 U.S.C. § 2259 defines a "victim" as any "individual harmed as a result of a commission of a crime" under Chapter 110 of Title 18 to the United States Code, pertaining to the sexual abuse and exploitation of children. 18 U.S.C. § 2259(c). It is undisputed that Solsbury was convicted of a crime under this chapter and that Vicky was depicted in five pornographic videos Solsbury possessed. Thus, Vicky is a victim for purposes of 18 U.S.C. § 2259 if she was harmed as a result of defendant Louis Solsbury's receipt of child pornography depicting images of her sexual abuse.

**B. CAUSATION**

Louis Solsbury was convicted of knowingly receiving sexually explicit images of Vicky when she was a child, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1), offenses included in Chapter 110. The statements of Vicky, along with the reports of Dr. Randall L. Green, the clinical psychologist who evaluated her mental health, demonstrate that Vicky faces a long and difficult course of treatment for post-traumatic stress disorder and a related insomnia disorder, undifferentiated somatoform disorder, dissociate disorder and an eating disorder, all caused and/or related to sexual abuse and the knowledge that images of her victimization, humiliation and exploitation have been downloaded and viewed by numerous individuals. *See* Government Exhibit No's 2–7.

As discussed above, there is clear harm inflicted on children depicted in child pornography. The questions for this Court are: (1) whether the harm to Vicky resulting from the defendant's receipt of her images caused the specific damages she claims, and (2) what sum of money will fully compensate Vicky for this harm. Un-

der 18 U.S.C. § 2259, the victim's losses may include:

(1) Medical services relating to physical, psychiatric, or psychological care;

(2) Physical and occupational therapy or rehabilitation;

(3) Necessary transportation, temporary housing, and child care expenses;

(4) Lost income;

(5) Attorneys' fees, as well as other costs incurred; and

(6) Any other losses suffered by the victim as a proximate result of the offense.

18 U.S.C. §§ 2259(a), (b)(3). Unlike the general restitution statutes which clearly articulate the proximate causation standard, only a vague reference to causation is included in Section 2259. The Government argues that the proximate cause requirement is satisfied because Vicky was harmed by the defendant's conduct. The Court agrees that Vicky was harmed by Solsbury's receipt and possession of child pornographic images. The proper inquiry is whether the Government has met its burden of proving, by a preponderance of the evidence, the amount of Vicky's losses proximately caused by Solsbury's conduct.

This is not the first case in which Vicky has filed a claim for restitution after receiving notice that a defendant was indicted for possession, access, receipt and/or distribution of her image. As noted, there have been claims submitted on behalf of Vicky in more than eighty different cases to date. In August of 2009, the Department of Justice began aggressively pursuing claims of restitution. In at least one case, the court has awarded Vicky restitution in excess of $200,000. *See United States v. Trantham,* No. 09–cr–072 (N.D.Tex. Jan. 26, 2010)(ordering defendant to pay $219,546.10 in restitution to "Vicky" in a case in which the defendant was convicted of attempted receipt and transporting and possession). *See also United States v. Fluitt,* No. 09–14014–cr–

Graham (S.D.Fla. Dec. 30, 2009)(ordering defendant to pay $147,000 in restitution to "Vicky" in a case in which the defendant possessed sexual exploitation images of her as a child).

The type of losses seen in possession cases differ significantly from production cases where the defendant is the actual abuser and producer of the child pornography. In production cases there is rarely a question of causation whereas in possession cases the boundaries of proximate cause become far more murky. It is difficult to assess the harm that Louis Solsbury may have caused and to apportion that among the thousands of individuals who have contributed to Vicky's injuries by viewing the pornographic images.

Vicky submitted a restitution claim requesting that this defendant pay $312,953.60. *See* Government Exhibit No. 2. Vicky's losses are well-documented and supported by statutory and case law. The Government contends that Louis Solsbury should be found jointly and severally liable along with all of the other defendants throughout the country who are responsible for Vicky's loss, up to the total amount of restitution ordered. In essence, the Government argues that Solsbury must pay the total sum of restitution ordered until or unless the Government advises Solsbury and the district court that Vicky has been fully compensated for her losses. The Government suggests the payments made by Solsbury will be credited to the full amount of Vicky's losses. The outstanding balance of restitution due and owing by Solsbury will be reduced, as required, by any amounts recovered by Vicky for the same loss in other federal criminal proceedings the Government has undertaken to track nationwide.

The only circuit court to address this precise issue has upheld a district court's denial of an award of restitution. *See In re Amy,* 591 F.3d 792 (5th Cir.2009). The

Eighth Circuit Court of Appeals has not yet addressed this issue nor considered a causation standard for awards of restitution in child pornography cases. There are several recent federal district court decisions in the Eighth Circuit that have held that 18 U.S.C. § 2259 requires the victim's losses to be proximately caused by the criminal acts of the defendant in order for restitution to be awarded. *See United States v. Woods,* 689 F.Supp.2d 1102 (N.D.Iowa 2010); *United States v. Strayer,* 2010 WL 2560466 (D.Neb. June 24, 2010); *United States v. Patton,* 2010 WL 1006521 (D.Minn. March 16, 2010). None of these decisions resulted in an award of restitution against the offender. Opinions from numerous district courts throughout the country are divided with orders ranging from no award of restitution based on lack of causation to awards in excess of $3 million dollars.

There is no question that everyone associated with the evils of child pornography—from the producers of the images to the consumers of the end product—contribute to the victim's never-ending harm. The more difficult issue is determining what portion of the victim's losses, if any, were proximately caused by the specific conduct of this particular defendant, Louis Solsbury. The losses described in Vicky's reports are generalized and were initially caused by abuse at the hands of her father. Beginning in May 2000, Vicky's father forced her to engage in multiple sexual acts for the purpose of creating pornographic media that he subsequently distributed in interstate commerce via the Internet, worldwide. *See* Government's Exhibit No. 6. The losses described in the reports are also caused by the general existence of the pornographic images and their broad dissemination. However, no effort has been made to show the portion of those losses specifically caused by Solsbury's possession of five pornographic videos. The Government ultimately bears the burden to prove restitution. *See* 18 U.S.C. § 3664(e) (2006) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the losses sustained by a victim as a result of the offense shall be on the attorney for the Government").

■ The Court concludes that 18 U.S.C. § 2259 includes a proximate cause requirement and the statute requires that restitution be ordered only if the defendant's crime is the proximate cause of the victim's losses. *See In re Amy,* 591 F.3d 792, 794 (5th Cir.2009) (citing cases from the 2nd, 3rd, and 9th Circuit). The Court must order restitution for only the amount of losses proximately caused by Louis Solsbury's conduct. To quantify those losses is an evidentiary nightmare. It is clear from the evidence that a significant portion of Vicky's losses were caused by her father's sexual abuse as well as the existence and dissemination of the pornographic images throughout the world. There are hundreds of thousands of individuals who have contributed in some way to the victim's losses by viewing these disturbing images over the past decade.

In summary, there is no dispute that Vicky has been harmed by her father's sexual abuse and the ongoing distribution, possession, and viewing of the depictions of that abuse. However, there is scant evidence in the record before the Court as to what specific losses were proximately caused by Louis Solsbury's receipt of those images years later. There is nothing in Dr. Green's reports, or any other evidence before the Court, which permits it to be able to discern, with any reasonable certainty, which of Vicky's losses were proximately caused by Louis Solsbury's criminal conduct. The Court is unable to determine, with any reasonable certainty, what losses are attributable to

the egregious acts of sexual abuse committed by Vicky's father, what losses are attributable to the countless others who have received, distributed, or possessed the images, or what losses were caused by this particular defendant's conduct in possessing the pornographic images in North Dakota. Without more specific evidence, any award of restitution would be an arbitrary calculation based on speculation and guess work, at best. The decision to award restitution in these types of cases should be, and needs to be, based on some semblance of reason, common sense, and fairness rather than speculation.

The Court is very sympathetic to Vicky and acknowledges the profound and detrimental harm suffered by her and all children who have been sexually abused, and whose victimization has been recorded and disseminated worldwide on the Internet. The Court also recognizes the difficult task the Government has in establishing the amount of a victim's losses proximately caused by a particular defendant convicted of a possession charge in federal court. The legal briefs and arguments submitted by counsel for the Government in support of a restitution award are excellent and the effort laudable. However, the Government has the burden of proof and the Government has failed to meet its burden to prove what losses sustained by Vicky were a proximate cause and result of Louis Solsbury's criminal conduct. Of concern to the Court are some of the following factors which relate to the difficult issue of causation:

(1) The defendant, Louis Solsbury, did not produce or distribute the pornographic images, nor did he create any internet postings or web pages featuring Vicky;

(2) Solsbury did not contribute to any blogs or chat rooms about Vicky;

(3) Neither the forensic psychological report of Dr. Randall Green nor any other reports submitted in this case mention Solsbury;

(4) Solsbury has never attempted to contact Vicky; and

(5) There has been no evidence presented that Louis Solsbury ever viewed the images of Vicky that were found on his computer. The record reveals that Solsbury downloaded approximately five videos of Vicky through "LimeWire" which is a peer-to-peer file sharing network, but there is no evidence that Solsbury actually viewed those images;

For more than 30 years Congress has focused attention on the scope of child pornography offenses and the severity of penalties for offenders. By creating new offenses, enacting new mandatory minimums, increasing statutory maximums, and providing directives to the United States Sentencing Commission, Congress has expressed its will regarding appropriate penalties for child pornography offenders. Unfortunately, the current statutory framework designed to assist victims of child pornography is unworkable in the criminal arena. The undersigned believes that the controversial subject of restitution awards in child pornography cases is one best left for Congress to resolve.[1] These

---

1. For example, Congress could consider establishing a restitution schedule in the Sentencing Guidelines under U.S.S.G. § 5E1.1 for child pornography offenses. A restitution schedule or table could be structured similar to the fine schedule for individual defendants under U.S.S.G. § 5E1.2. There could be a minimum and maximum restitution award established based upon the offense level and/or the number of images involved. *See* U.S.S.G. § 2G2.2(b)(7). Congress could also consider establishing a compensation fund for identified victims of child pornography offenses. Another legislative alternative could be the establishment of a fine schedule that would require the payment of fines by child pornog-

troublesome cases cry out for an appropriate restitution remedy but one best determined by Congress—not by a variety of conflicting and inconsistent awards and decisions as have evolved over the past year.

## II. *CONCLUSION*

The Court finds that Vicky was harmed and is a victim for purposes of 18 U.S.C. § 2259. A restitution award under this statute requires that the Government prove by a preponderance of the evidence the amount of the victim's losses proximately caused by the defendant's conduct. The Court has carefully considered the record, the briefs, and the arguments of the parties and finds that the Government has not met its burden of proof.

**IT IS ORDERED** that the Government's request for restitution is **DENIED.**

raphy offenders to a national fund under the Department of Justice and monies then disbursed to victims for treatment and counseling expenses and other economic losses.

These are only a few suggestions for consideration which would arguably offer a more practical solution to the unworkable restitution provisions in 18 U.S.C. § 2259.