# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 27, 2011

No. 09-11071

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRYAN K. DICKSON,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before JOLLY, HIGGINBOTHAM, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Bryan Dickson was convicted of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and production of child pornography in violation of 18 U.S.C. § 2251(a).  He appeals his conviction and sentence.  We affirm.

No. 09-11071

I.

Federal agents executed a search warrant at Dickson's residence and found a CD that contained videos and images of child pornography. Some of the pictures were of a one-year-old boy, A.B., which were the only pictures taken by Dickson himself.

After the government presented its case at a bench trial, Dickson unsuccessfully moved for judgment of acquittal on the ground that the government had failed to meet its burden as to each element of both counts. Dickson presented no evidence, and the court found him guilty.

The presentence report ("PSR") stated that counts one (possession) and two (production) should be grouped pursuant to U.S.S.G. § 3D1.1(a)(1)-(3) because "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." § 3D1.2(c). The offense level applicable to the group is the offense level of the most serious count, *see* § 3D1.3(a), and the PSR determined that count two (production) produced the highest base offense level, 32. The PSR recommended increasing the base level by four because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence, pursuant to § 2G2.1(b)(4).

After the application of two other enhancements that are not at issue here, Dickson's total offense level was 42. He had a category I criminal history from one prior adult conviction for seven counts of sexual assault, the victims of which were a three-year-old child and a child under thirteen. The total offense level resulted in a guideline range of 360 months to life, which became 360 to 840 months because the upper limit of the guideline range exceeded the maximum statutory sentence. Neither party objected to the PSR.

At sentencing, Dickson requested a 360-month sentence. The government responded that a sentence on the lower end of the range was inappropriate and

2

further offered that although charges were never filed against Dickson, law enforcement and A.B.'s father believed that Dickson had sexually abused A.B.'s two older brothers as well. Given Dickson's extensive criminal history, the district court determined that "a reasonable sentence in this case, one that would adequately address all of the factors the Court should consider under . . . § 3553(a), would be one that would ensure to the maximum possible extent that this defendant will never be free in society again."

The court sentenced Dickson to 840 months: 240 months for count one and 600 months for count two, to be served consecutively. Dickson objected to the reasonableness of the sentence and appealed. He also appealed the denial of his motion for acquittal and his motion for dismissal of his indictment.

## II.

We review denials of motions for judgments of acquittal *de novo*. *United States v. Izydore*, 167 F.3d 213, 219 (5th Cir. 1999). We view the evidence in the light most favorable to the government "with all reasonable inferences to be made in support of the . . . verdict." *United States v. Moser*, 123 F.3d 813, 819 (5th Cir. 1997). The evidence is sufficient if it "would permit a rational trier of fact to find [the defendant] guilty beyond a reasonable doubt." *United States v. Pankhurst*, 118 F.3d 345, 352 (5th Cir. 1997).

To convict under § 2252(a)(4)(B) for possession of child pornography, the government must prove that the defendant possessed a visual depiction of a minor engaging in sexually explicit conduct that "has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce . . . , or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer." Both parties conceded that Dickson's images never traveled in interstate commerce. The issue, therefore, is whether the government presented sufficient evidence that the

No. 09-11071

images were produced using materials that traveled in interstate commerce. The government argues that it met its burden by showing that the CD holding the images was made in the Republic of China.

Whether copying images to another device constitutes "production" is an issue of first impression for this circuit.  Several of our sister circuits, however, have reached the same conclusion: that images are "produced" for purposes of § 2252(a)(4)(B) when they are copied or downloaded onto hard drives, disks, or CDs.[1]  "When the file containing the image is copied onto a disk, the original is left intact and a new copy of the image is created, so the process 'produces' an image."  *United States v. Guagliardo*, 278 F.3d 868, 871 (9th Cir. 2002).

Dickson contends that he did not use the CD to produce the images, but only to store them.  He asserts that the statute contemplates the original act of producing the images, not their subsequent transfer onto a CD, which he characterizes as reproduction.  Had Congress wanted to criminalize reproduction, he argues, it would have done so specifically, as it did in § 2252(a)(2) by criminalizing receiving, distributing, or reproducing child pornography.[2]  Finally, Dickson asserts that, at the very least, the statute is ambiguous and thus should be construed in his favor under the rule of lenity.

Dickson's arguments are as unpersuasive to us as similar arguments were to the Fourth, Seventh, Ninth, and Tenth Circuits.  First, "producing" is broadly defined as "producing, directing, manufacturing, issuing, publishing, or advertising."  18 U.S.C. § 2256(3).  Congress could have left "producing" undefined,

---

[1] *See United States v. Caley*, 355 Fed. App'x 760 (4th Cir. 2009); *United States v. Schene*, 543 F.3d 627, 638 (10th Cir. 2008); *United States v. Angle*, 234 F.3d 326 (7th Cir. 2000); *United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997).

[2] Any person who "knowingly receives, or distributes, any visual depiction . . . or knowingly reproduces any visual depiction for distribution . . . if . . . the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct."  18 U.S.C. § 2252-(a)(2) (2006).

4

No. 09-11071

thereby giving it its ordinary meaning.  But by defining "producing" using the term itself plus other closely related terms, Congress intended the statute to cover a wider range of conduct than merely initial production.[3]  Excluding copying from our interpretation of "producing" would be too restrictive a reading.

Second, § 2252(a)(2) uses "reproduce," rather than "produce" as in § 2252-(a)(3) and (4), because that subpart addresses receiving child pornography, unlike the other two subparts, which address selling and possessing child pornography, respectively.  One who sells or possesses images may also produce them and thus could continue to produce copies, but one who merely receives pornography could not have been the original producer and thus may only reproduce.  Finally, the statute is not ambiguous, so the rule of lenity does not apply.

Because the government presented sufficient evidence that the CD was shipped from the Republic of China, a reasonable fact-finder could have found that Dickson produced the pornographic images using materials that traveled in interstate or foreign commerce.  The conviction is affirmed.

III.

Dickson argues that the district court erred when it enhanced his sentence for production (count two) based on the sadistic or masochistic images that he possessed (count one). Dickson asserts that conduct underlying one count cannot enhance another count when grouped under § 3D1.2(c) because, unlike for counts grouped under § 3D1.2(d), the guidelines do not explicitly say that the offense

---

[3] *See United States v. Fadl*, 498 F.3d 862, 867 (8th Cir. 2007) ("Congress intended to retain a non-technical definition of the term 'producing' (that is, in the sense of creating or making), but also sought to expand its scope to include activities that may not be generally considered to fall with the typical meaning of the term.  We therefore conclude that list of terms . . . reflects Congress's intention to enact a broad definition of 'producing' . . . .").

level is determined by the combined offense behavior taken as a whole.[4] Dickson says that the enhancement could apply to his sentence if he had produced sadistic or masochistic images, but the only images he was convicted of producing were those of A.B., and those were not sadistic or masochistic.

Because Dickson failed to object to the procedure used to calculate his guideline range or to the application of the enhancement, we review the sentence for plain error. *United States v. Gonzalez-Terrazas*, 529 F.3d 293, 296 (5th Cir. 2008). Plain error occurs when the error was clear or obvious and affected the defendant's substantial rights. *Id.* If the defendant can show plain error, this court has the discretion to correct the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

Dickson is correct that the district court erred in calculating his sentence. According to the guidelines, a court should first determine the base level for an offense, then apply any appropriate specific offense characteristics or enhancements. U.S.S.G. § 1B1.1(a)-(c). "If there are multiple counts of conviction, [the court should repeat those steps] for each count." U.S.S.G. § 1B1.1(d).

Next, if necessary, the court should group the various counts according to § 3D and adjust accordingly.[5] The grouping commentary states that "the highest offense level of the counts in the group is used. Ordinarily, it is necessary to determine the offense level for each of the counts in a Group in order to ensure that the highest is correctly identified." U.S.S.G. § 3D1.3 cmt. 2. The guidelines, therefore, plainly instruct a court to apply enhancements before grouping. The offense that produces the highest total offense level, not the highest base offense

---

[4] *See* U.S. SENTENCING GUIDELINES MANUAL § 3D1.3 cmts. 2-3 (2004).

[5] U.S.S.G. § 1B1.1(d). Under our circuit's precedent, the district court probably should not have grouped the two counts, because the victims in the images Dickson possessed and in those he produced were different. *See United States v. Norris*, 159 F.3d 926, 931 (5th Cir. 1998).

6

No. 09-11071

level, sets the level for the group.[6]

It follows that the district court should have calculated one total offense level for possession and a separate one for production. The court erred when it first determined that production produced the highest base offense level and then, second, enhanced the total offense level for the group based on the sadistic or masochistic images Dickson possessed.

But for an error to constitute "plain error," it must also have affected the defendant's substantial rights such that "there is a reasonable probability that, but for the district court's misapplication of the Guidelines, [the defendant] would have received a lesser sentence." *Gonzalez-Terrazas*, 529 F.3d at 298 (internal quotation marks and citation omitted). Dickson contends that his guideline range, absent the error, would have been 235-293 months, below the erroneous sentencing range of 360 months to life, and so the court would not have imposed the statutory maximum absent the error.

We have generally found that when there is no overlap between the correct and erroneous sentencing ranges, substantial rights were affected. *United States v. Jones*, 596 F.3d 273, 278 (5th Cir.), *cert. denied*, 131 S. Ct. 93 (2010). That is not always the case, however. In *United States v. Davis*, 602 F.3d 643, 648-49 (5th Cir. 2010), the defendant's correct and erroneous ranges did not overlap, but we upheld his sentence, which exceeded even the erroneous range, because the evidence showed that the district court had "ample independent bases for imposing the sentence it did" in light of the seriousness of the offense.

---

[6] The guidelines discuss such an outcome in the comments to the grouping rules: "Sometimes the rule specified in this section may not result in incremental punishment for additional criminal acts because of the grouping rules." U.S.S.G. § 3D1.3 cmt. 4. That comment gives an example of a rape, aggravated assault, and robbery committed against one victim being grouped together. Assault is included as a specific offense characteristic under the rape guidelines, but the robbery would not enhance the guideline range. Although the additional factor of property loss would not change the range, the court may consider it when determining the sentence within the range.

Dickson has not shown that there is a reasonable probability that he would have received a lesser sentence absent the error.  The district court highlighted Dickson's extensive criminal history and commented that "[h]e [was] one of the most vicious predators on children" it had ever encountered.[7]  Describing Dickson's activity as "a very exceptional case," the court believed that no term of imprisonment would likely deter him from engaging in child molestation, and therefore "a reasonable sentence . . . would be one that would ensure to the maximum possible extent that this defendant will never be free in society again." Based on the seriousness of his offense and his past crimes, the court sentenced Dickson to the statutory maximum and so had an independent basis for imposing the sentence.

Further, the court could have considered the nature of the images Dickson possessed, albeit not in the erroneous way it did.  In fashioning a sentence, a court may consider, as "relevant conduct," acts in addition to those underlying the offense of conviction.  *See United States v. Fowler*, 216 F.3d 459, 461 (5th Cir. 2000).  Under § 1B1.3(a)(1), the base offense level and enhancements are determined by "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."  The violent images that Dickson possessed were on the same CD that contained the pictures of A.B.; therefore, Dickson possessed the violent images "during the commission" of his acts of production.

---

[7] The court noted that Dickson began molesting children in the 1980s, and was convicted in 1986 in New Jersey of molesting children in his care.  And despite a severe sentence, Dickson continued to do so.  His *modus operandi* had been to hold himself out as a caretaker, running ads soliciting babysitting employment and seeking jobs that gave him access to young children, such as when he molested children as lifeguard.  The court also expressed its disgust at the "sick, sick handling" of A.B., an infant left in Dickson's custody.

No. 09-11071

*Fowler* involved a situation factually similar to Dickson's. The defendant was convicted of transporting child pornography under § 2252(a)(1) after sending images to an undercover agent. When federal agents arrested Fowler, he was in possession of images portraying sadistic sexual conduct, which the agents believed involved minors. The district court enhanced his sentence because of those images. On appeal, we determined that the enhancement should not have applied, because Fowler never sent the sadistic images, but only the non-sadistic ones, to the agent, and thus the sadistic images did not form the basis of any counts, nor were they part of the same course of conduct as the conviction. *Fowler*, 216 F.3d at 461-62.

By contrast, Dickson's conviction for possession was based on possession of the violent images, and he possessed them on the same CD that he used to produce the images of A.B. Therefore the court, in enhancing the sentence, could have considered the nature of the images Dickson possessed. Because the court could have considered those images and had ample independent evidence to support its sentence, Dickson's substantial rights were not affected.

IV.

Dickson claims the district court erred in denying his motion to dismiss the indictment on count two (production) because the Commerce Clause does not give Congress the power to regulate the conduct underlying that charge. Dickson concedes that this argument is foreclosed by *United States v. Kallestad*, 236 F.3d 225 (5th Cir. 2000), and he raises it solely to preserve it for further review. Therefore we affirm the denial of the motion to dismiss the indictment on count two.

AFFIRMED.