# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 17, 2012

No. 11-10929

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

HARVEY JAMES PELLAND,

Defendant-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:10-CR-42-1

Before KING, SMITH, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Harvey James Pelland appeals his convictions on one count of possessing child pornography and five counts of receiving visual depictions of a minor engaging in sexually explicit conduct. He argues that the government offered insufficient evidence to sustain these convictions, that the possession conviction was based on erroneously decided circuit precedent, and that the receipt convictions were multiplicitous. For the reasons that follow, we AFFIRM.

---

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 11-10929

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant-Appellant Harvey James Pelland is a seventy-seven-year-old Canadian native. In March 2007, he was convicted in British Columbia of making or publishing child pornography and possessing child pornography. After serving a prison sentence for these convictions, Pelland moved to the United States in violation of his parole conditions. While living in Arizona in early 2008, Pelland met Patsy Poisson in an Internet chat room aimed at users over age fifty-five. The two later met face-to-face, and continued to have contact via telephone and the Internet. Because Poisson was to undergo hip surgery in August 2008, Pelland agreed to house-sit at her home in Odessa, Texas. After Poisson returned in November 2008, the two became roommates, moving into a rented house in Big Spring, Texas.

Poisson and Pelland had separate bedrooms in the Big Spring house. Pelland kept in his bedroom a laptop computer he had owned before moving in, as well as a Compaq desktop computer that Poisson gave to him after they moved in. Nobody but Pelland used the desktop computer after Poisson gave it to him. Poisson also gave Pelland a thumb drive, which she had previously used only to store music files. Pelland and Poisson each had Internet access in his or her bedroom.

After law enforcement learned of Pelland's whereabouts, Big Spring Police obtained an arrest warrant for Pelland for failing to register as a sex offender. They arrested him at his and Poisson's home on April 6, 2009. A federal grand jury later charged Pelland with multiple child pornography offenses. Although the district court dismissed the initial indictment without prejudice based on a Speedy Trial Act violation, the government filed a new criminal complaint against Pelland. The grand jury then returned a superseding indictment, charging Pelland with possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) (Counts 1 and 4), and receiving visual depictions of a minor

2

engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) (Counts 2–3 and 5–7).

At trial, Big Spring Police Officer Thad Thomas and I.D. Technician Wayne Jones testified that, following Pelland's arrest, police searched his bedroom with his verbal and written consent. They removed, *inter alia*, the desktop computer and thumb drive that Poisson had given to him, Pelland's laptop, and about thirty-five DVDs. Big Spring Police turned these devices over to Immigration and Customs Enforcement computer forensics agent James Paul Cummings, Jr., for investigation and analysis. Cummings testified that he found over one hundred images of nude children on the desktop's hard drive, over thirty such images on the thumb drive, and a video on the thumb drive depicting a minor engaging in sexually explicit conduct. The parties stipulated that the visual depictions for which Pelland was charged included actual minors under age eighteen. Cummings found no sexually explicit files on Pelland's laptop or the DVDs.

Testifying as an expert on computer investigations and analysis, Cummings explained the technical aspects of his findings. Many of the child pornography files in the desktop and thumb drive included information respecting their "creation dates." A creation date can be either the date a file is transferred onto a new storage device, or a static date showing when a file was originally created (for example, by being downloaded from the Internet). The creation dates for the ten files set out in the superseding indictment were six separate dates between March 18 and 31, 2009.

Cummings verified that the desktop computer's date and time settings were correct. Department of Homeland Security ("DHS") investigator Michael Brunet testified that Pelland admitted in a post-arrest interview to using the desktop computer during the period covering the charged files' creation dates. Pelland further stated in this interview that he was responsible for any

pornographic images found on the computers or thumb drive. Although Pelland was charged only for possessing or receiving files with March 2009 creation dates, some of the child pornography files that Cummings found had creation dates as early as May 6, 2008.

Cummings testified that although the image set out in Count 4 was found in the desktop computer's "temporary internet files" folder—indicating this image was downloaded from the Internet—the remaining files set out in the superseding indictment were in different file paths that did not necessarily indicate Internet viewing or downloading.

Cummings also testified as to Pelland's use of "Internet relay chats" ("IRCs")—Internet chat rooms that permit users to send electronic messages to one another. Pelland frequented IRCs related to sexual exploitation of children. Users in these IRCs asked where they could find child pornography, directed others to websites where child pornography could be downloaded, and arranged to exchange child pornography via e-mail or file-sharing programs. Pelland's desktop computer automatically generated logs showing the date and time Pelland entered a child pornography IRC, as well as the explicitly named "channels" he accessed in these IRCs. Cummings recovered these logs, which showed IRC log-in dates ranging from February 22 to April 3, 2009. In a trial exhibit, the government set out the sixteen dates in the period from March 10 to April 3, 2009 on which Pelland accessed at least one IRC. The creation dates of the ten files for which Pelland was charged each corresponded to an IRC log-in date.

Pelland confirmed to DHS investigator Brunet that he had used IRCs to obtain links to child pornography websites, and that he had viewed child pornography on these websites. Cummings determined that a sexually explicit website had been accessed from the desktop computer, albeit on a date that does not match the creation date of any file for which Pelland was charged. Pelland's

descriptions to Brunet of the images he had viewed on the Internet were consistent with the images set out in the superseding indictment.

Cummings also found file-deletion software on the desktop's hard drive, which is used to wipe files from a data storage device. Using a computer operating system's built-in "delete" function does not completely remove a file; doing so merely removes the computer's ability to find the file, and permits the computer to overwrite the file with new files. Cummings determined that the file-deletion software had been used, and Brunet testified that Pelland expressed surprise when Brunet described files Pelland thought he had deleted from the thumb drive. Poisson testified that she had not installed this software, and that nobody but Pelland had used the desktop from the time Poisson gave it to him until police seized it. Pelland's statements to Brunet corroborated this testimony.

Pelland made an oral motion for a judgment of acquittal at the close of the government's case, which the district court denied. Pelland presented no evidence. The jury found him guilty on all counts, and the district court sentenced him to concurrent terms of 151 months' imprisonment on each of the five receipt convictions and 120 months' imprisonment—the statutory maximum—on each of the two possession convictions.

## II. DISCUSSION

### A.   Evidentiary Sufficiency

Because he moved for a judgment of acquittal after the government rested, and presented no evidence in his defense, Pelland properly preserved his evidentiary sufficiency argument. *United States v. Resio-Trejo*, 45 F.3d 907, 910 n.6 (5th Cir. 1995). A challenge to the sufficiency of evidence supporting a conviction is reviewed de novo. *United States v. McDowell*, 498 F.3d 308, 312 (5th Cir. 2007). "When reviewing the sufficiency of the evidence, this Court views all evidence, whether circumstantial or direct, in the light most favorable to the Government with all reasonable inferences to be made in support of the jury's

verdict." *United States v. Moser*, 123 F.3d 813, 819 (5th Cir. 1997). "[W]e consider whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Jara-Favela*, 686 F.3d 289, 301 (5th Cir. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt, so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *Moser*, 123 F.3d at 819.

Pelland was charged in Counts 2–3 and 5–7 with violating 18 U.S.C. § 2252(a)(2), which provides punishment for:

> Any person who knowingly receives, or distributes, any visual depiction using any means or facility of interstate or foreign commerce . . . or which contains materials which have been mailed or so shipped or transported, by any means including by computer . . . if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct . . . .

Pelland argues that the government failed to prove each count's interstate commerce element because it offered insufficient evidence to show that he obtained the charged files from the Internet, as alleged in the superseding indictment. He applies the same argument to the § 2252A(a)(5)(B) possession offense charged in Count 1, which also includes an interstate commerce element that can be satisfied by obtaining child pornography from the Internet. Pelland does not challenge his possession conviction under Count 4.

In reviewing a § 2252A(a)(5)(B) conviction, we have held that the government must sustain its burden of proof by "independently link[ing] each image to interstate commerce." *United States v. Henriques*, 234 F.3d 263, 266 (5th Cir. 2000). "This standard limits the government's ability to build a case on inferences, e.g., by analogizing that since one image was downloaded from the Internet, the rest of the images must also be connected to the Internet." *Id.* The

No. 11-10929

*Henriques* court further held that the presence of child pornography images on a computer that is connected to the Internet does not by itself establish that the images were obtained from the Internet. *Id.* at 266–67.

We subsequently held in *United States v. Runyan*, 290 F.3d 223, 242 (5th Cir. 2002), that "circumstantial evidence linking a particular image to the Internet . . . can be sufficient evidence of interstate transportation to support a conviction under § 2252A."

In the instant matter, the trial evidence permitted a "rational trier of fact" to find beyond a reasonable doubt that Pelland obtained the files in Counts 1–3 and 5–7 from the Internet. *See Jackson*, 443 U.S. at 319; *Henriques*, 234 F.3d at 266. This evidence was as follows:

- Pelland admitted to Brunet that he used the Internet to view and download child pornography;

- Corroborating this admission, Cummings found on Pelland's hard drive a URL associated with child pornography, and found the image set out in Count 4 in the hard drive's "temporary internet files" folder;

- Pelland described to Brunet the images and videos he had viewed on the Internet; Brunet testified that these descriptions were consistent with the child pornography images and video for which Pelland was charged;

- Brunet testified that Pelland admitted to visiting Internet chat rooms focused on child exploitation, and to using them to obtain links to child pornography websites;

- Cummings testified that he found automatically generated logs showing the dates on which Pelland logged into these chat rooms; he further testified that the creation date of each of the ten files set out in the superseding indictment corresponded to a log-in date; and

- When discussing with Pelland the images Pelland had "viewed" on the Internet, Brunet described images from the video on the thumb drive (charged in Count 6); Brunet

7

No. 11-10929

testified that Pelland "identified those as ones he had *viewed*," implying he had watched the video on the Internet.

We must view all evidence and make all reasonable inferences in support of the jury's verdict. *Moser*, 123 F.3d at 819. The image underlying Count 4—which Pelland concedes came from the Internet—was created on Pelland's hard drive on the same day he visited one of the chat rooms from which he routinely obtained links to child pornography websites. The jury thus could have reasonably inferred that he downloaded this image from a website he learned of in the chat room. Based on this strong inference, the jury also could have reasonably inferred that Pelland obtained the remaining charged files from the Internet because all were created on days that Pelland visited child pornography chat rooms. This inference is supported by the unlikelihood that all nine of these files only coincidentally were created on the sixteen days falling between March 10 and April 3, 2009 on which Pelland accessed IRCs. Although the government did not show that Pelland downloaded child pornography every day he visited a chat room, the jury could have reasonably concluded that Pelland's use of file-deletion software explained this inconsistency. Brunet's testimony—that Pelland's descriptions of images and videos he had viewed on the Internet were consistent with the images and video for which he was charged—further supported an independent link between each charged file and the Internet. Finally, as we will explain, the jury could have eliminated all non-Internet sources of child pornography potentially available to Pelland.

Case law in this circuit and others supports upholding Pelland's convictions based on this circumstantial evidence. In *Runyan*, 290 F.3d at 242–43, the presence of website addresses and Internet-related advertising language embedded in the pornographic images was enough for the jury to find an interstate nexus. In *United States v. Hilton*, 257 F.3d 50, 54–55 (1st Cir. 2001), the jury permissibly found an interstate nexus when expert testimony

No. 11-10929

established that the charged files were located in a subdirectory "contain[ing] software used in conjunction with Internet chat rooms," and "the time and date features of each of the image files were 'indicative' of files that had been transmitted via modem." In non-pornography cases, evidence that certain events occurred around the same time has supported criminal convictions. *See United States v. Heron*, 323 F. App'x 150, 155 (3d Cir. 2009) (unpublished) (defendant's sale of stock on same day that co-conspirator possessed negative information about company supported securities fraud conspiracy conviction); *United States v. McDermott*, 245 F.3d 133, 136, 138–39 (2d Cir. 2001) (evidence consisting almost entirely of stock trades that correlated to timing of phone calls supported insider trading conviction).

Relying on *Henriques*, Pelland incorrectly contends that the government proved only that he had an Internet connection, and that this does not establish Internet downloading of the charged files. In *Henriques*, 234 F.3d at 267–68, there was *no* evidence independently linking an explicit image to the Internet. As we have discussed, there was sufficient circumstantial evidence in the instant matter to prove that Pelland obtained each file from the Internet.

Pelland also erroneously suggests that the government was required to prove that he could not have obtained the charged files from non-Internet sources. He ignores that "[t]he evidence need not exclude every reasonable hypothesis of innocence." *Moser*, 123 F.3d at 819. In any event, the jury could have reasonably concluded that the Internet was the only plausible source of the charged files.

The only non-Internet sources suggested at trial were Pelland's desktop and laptop computers, the thumb drive, the DVDs, and the computer and disks in Poisson's room—all but the last of which were seized in an apparently thorough search of the Big Spring house. The jury could have ruled out each of these alternative sources.

No. 11-10929

The jury could have found that Poisson's computer and disks contained no pornography because Pelland told Brunet that she "was too religious to look at stuff like that." Further, Cummings testified that it was highly unlikely that Poisson accidentally downloaded pornography onto the computer or thumb drive she gave to Pelland.

Although Pelland could have transferred existing files from his DVDs or laptop onto the thumb drive and desktop, Cummings testified that he found no pornography on the DVDs or laptop. Because the most recently created file in the superseding indictment had a March 31, 2009 creation date—one week before Pelland was arrested—the jury could have reasonably concluded that Pelland did not transfer the charged files to the thumb drive and desktop and then destroy any files on his DVDs and laptop just before the unexpected arrest.

The jury had additional reasons to rule out possible alternative sources. Pelland's child pornography files—both charged and uncharged—had creation dates ranging from May 2008 to March 31, 2009. As Cummings testified, a creation date can be the date a file was downloaded from the Internet or the date it was transferred from another device. Pelland contends that the creation dates reflect the dates on which he transferred pre-existing files onto the thumb drive and desktop, not the dates on which they were originally downloaded. The jury could have reasonably concluded, however, that Pelland would not have transferred the files in a piecemeal fashion on many separate dates, and that Internet downloading on separate dates was more plausible.

If, as Pelland urges, creation dates reflected the dates that pre-existing files were transferred (and not download dates), none of the files on the thumb drive or desktop could have had creation dates earlier than November 2008—the date Poisson gave these devices to Pelland, and thus the earliest date he could have transferred files onto them. Because some of the uncharged files have

creation dates going back to *May* 2008, however, the jury could have reasonably inferred that the creation dates reflected download dates, not file transfer dates.

The jury also could have ruled out the possibility that Pelland obtained the files from in-person exchanges with others. First, no evidence suggested Pelland sought out such exchanges. *See United States v. Wollet*, 164 F. App'x 672, 676 (10th Cir. 2006) (unpublished) ("The evidence contains no inference that someone else gave [the defendant] the diskettes, nor that the pornographic images traveled any alternative path to his doorstep."). Second, Pelland had admitted to viewing child pornography on the Internet, and to obtaining links to child pornography websites from the chat rooms he frequented. The jury could have reasonably inferred that because Pelland was already using the Internet—which he could conveniently access from his own home—he would not have gone out of his way to obtain child pornography files in person.

In view of these deductions, the jury could have reasonably concluded that Pelland's only plausible source of child pornography files was the Internet. *See Jackson*, 443 U.S. at 319. Because this and other circumstantial evidence established an independent link between each charged file and the Internet, we will not disturb the jury's verdict as to Counts 1–3 and 5–7. *Runyan*, 290 F.3d at 242; *Henriques*, 234 F.3d at 266.

## B.    Alternate Interstate Commerce Theory

Pelland also challenges the government's alternate interstate commerce theory as to Count 1. He was charged in this count with violating 18 U.S.C. § 2252A(a)(5)(B), which provides punishment for:

> Any person who . . . knowingly possesses, or knowingly accesses with intent to view, any . . . material that contains an image of child pornography . . . that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means . . . .

No. 11-10929

Pelland concedes that the government proved the interstate commerce element of this charge. This court has held that "producing" includes copying an existing file by saving it onto a storage device. *United States v. Dickson*, 632 F.3d 186, 189–90 (5th Cir.), *cert. denied*, 131 S. Ct. 2947 (2011). Because the two images underlying Count 1 were saved onto a Chinese-manufactured thumb drive, they were "*produced* using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce." 18 U.S.C. § 2252A(a)(5)(B) (emphasis added). Pelland argues, however, that the *Dickson* court incorrectly defined the term "produced." Under the correct definition, he contends, an offender must "direct, manufacture, issue, publish, or advertise" the pornographic image, none of which he is alleged to have done.

Pelland's argument respecting the definition of "produced" is moot because, as we have discussed, the trial evidence was sufficient to prove the government's primary interstate commerce theory—that Pelland obtained the Count 1 images from the Internet. In any event, because *Dickson* has not been overruled or superseded by a decision of the Supreme Court or this court sitting en banc, we cannot overturn it. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999). Pelland recognizes that we must follow *Dickson*, and raises this argument only to preserve it for further review.

## C.    Multiplicity

Pelland argues that his five receipt convictions are multiplicitous. "Convictions are multiplicitous when the prosecution charges a single offense in more than one count." *United States v. Buchanan*, 485 F.3d 274, 278 (5th Cir. 2007) (citation and internal quotations omitted). "Where a multipart transaction raises the prospect of multiplicity under a single statute, the question becomes whether separate and distinct prohibited acts, made punishable by law, have been committed." *United States v. Reedy*, 304 F.3d 358, 363–64 (5th Cir. 2002) (citation and internal quotations omitted).

12

No. 11-10929

The government argues that Pelland has waived a multiplicity challenge to the receipt charges because he did not allege this defect before trial or show cause for failing to do so. Fed. R. Crim. P. 12(b)(3), (e); *United States v. Soape*, 169 F.3d 257, 265 (5th Cir. 1999). *But see* 1A Charles Alan Wright & Andrew D. Leipold, Federal Practice and Procedure § 193 (4th ed. 2008) (noting circuit split). The government concedes, however, that a defendant may appeal otherwise concurrent sentences on multiplicity grounds if, as here, separate monetary assessments have been imposed as to each conviction. *United States v. Galvan*, 949 F.2d 777, 781 (5th Cir. 1991). Pelland appears to challenge his sentences, and thus has not waived his multiplicity argument.

Because Pelland challenges multiplicitous sentences for the first time on appeal, plain-error review applies. *United States v. Spurlin*, 664 F.3d 954, 965 (5th Cir. 2011). Under this standard, he must show that "(1) there is error; (2) the error was clear and obvious, not subject to reasonable dispute; and (3) the error affected his substantial rights. *United States v. Hebron*, 684 F.3d 554, 558 (5th Cir. 2012). If he makes this showing, we may "remedy the error, but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

Pelland relies on *Buchanan*, 485 F.3d at 277–78, in which the defendant's four receipt convictions were based on four child pornography images found on one compact disc. We held that the convictions were multiplicitous because the trial evidence did not establish that the defendant "took more than one action to receive" the images—for instance, by downloading the images in four separate transactions from the same website, or by accessing separate websites from which each image was received. *Id.* at 282.

As we have discussed, the jury could have reasonably concluded from the matching file creation dates and chat room log-in dates that Pelland received each charged file from an Internet link he obtained from a chat room. Because

the creation dates of the files underlying each of the five challenged convictions reflect five separate download dates, these convictions are based on five "separate and distinct prohibited acts." *Reedy*, 304 F.3d at 363–64. Accordingly, the district court's imposition of a separate sentence as to each receipt conviction was not error, much less plain error.

## III. CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.