# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 11, 2022

Lyle W. Cayce
Clerk

No. 20-20575

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

GEORGE DANIEL MCGAVITT,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC 4:19-CR-649-1

Before HIGGINBOTHAM, STEWART, and WILSON, *Circuit Judges*.
CORY T. WILSON, *Circuit Judge*:

George Daniel McGavitt pled guilty to a three-count indictment charging him with coercion and enticement, sexual exploitation of a child, and possession of child pornography. McGavitt's offenses were grouped together at sentencing and his Guidelines range was calculated using the sexual-exploitation count. After applying enhancements, the district court sentenced McGavitt to concurrent terms of life, 360 months, and 120 months of imprisonment, followed by concurrent 15-year terms of supervised release. McGavitt now appeals, challenging the application of three sentencing enhancements. We affirm.

No. 20-20575

## I.

As part of his guilty plea, McGavitt admitted that the Government could prove the following facts.

On May 26, 2019, the Washington County, Arkansas Sheriff's Office was dispatched to the residence of a 13-year-old female (referred to as "MV1").[1] MV1 had confessed to her parents that she had been involved in an online relationship with Daniel McGavitt, a 45-year-old man, and that McGavitt had requested on several occasions that she send him nude photographs and videos of herself engaging in sex acts. MV1 also stated that on April 11, 2019, McGavitt traveled to Arkansas from his residence in Texas and engaged in sexual intercourse with her.

The Washington County Sheriff's Office relayed their report to the Federal Bureau of Investigation (FBI) in Little Rock for further investigation. Investigators were able to place McGavitt less than half a mile from MV1's Arkansas residence on April 11, 2019, through the records of a local towing company that had been dispatched to remove McGavitt's truck from a ditch. Subsequently, the FBI obtained a search warrant for three different Facebook accounts, including that of MV1 and a profile used by McGavitt. A review of these accounts uncovered a history of explicit communications between McGavitt and MV1 spanning at least nineteen different days from March 8 through May 22, 2019. Investigators also discovered three images of MV1, sent at McGavitt's behest, that met the definition of child pornography under 18 U.S.C. § 2256.

---

[1] There is conflicting information in the record regarding MV1's age at the time of the offense. Several paragraphs of the PSR, as well as the criminal complaint, suggest that MV1 was 13 at the time, while other paragraphs of the PSR, as well as MV1's statement, suggest that she was 12.

No. 20-20575

On August 15, 2019, McGavitt was arrested in Texas on an unrelated state charge of aggravated sexual assault of a child under the age of 14. After McGavitt was transferred into federal custody several days later, federal investigators obtained a search warrant for a cellular phone that was seized during McGavitt's arrest. The phone contained 71 images of MV1, 16 of which McGavitt conceded met the federal definition of child pornography. The phone also contained 13 videos of MV1, all of which McGavitt likewise conceded met the federal definition of child pornography. One video, 22 seconds in length, depicted MV1, whose face was visible throughout, "lying on a bed while completely nude . . . inserting the handle of a hairbrush into her vagina." Two other videos of comparable length depicted MV1 "inserting her fingers into her vagina."

On September 5, 2019, an indictment was filed in the United States District Court for the Southern District of Texas, charging McGavitt with three counts: (1) "coercion and enticement of a minor for the purpose of rape, in violation of 18 U.S.C. § 2422(b)"; (2) "sexual exploitation of children by coercion and enticement for the production of child pornography, in violation of 18 U.S.C. § 2251(a) and (e)"; and (3) "possession of child pornography, in violation of 18 U.S.C. [§]§ 2552A(a)(5)(B) and 2252A(b)(2)."[2] McGavitt appeared with counsel before the district court in March 2020 and pled guilty to all three counts.

Following his guilty plea, McGavitt faced sentencing. A probation officer compiled a Presentence Investigation Report (PSR). The PSR grouped McGavitt's three counts pursuant to U.S.S.G. § 3D1.2(b), which requires grouping of counts that involve a common victim and objective, and

---

[2] The indictment alleged that Count 1 occurred "[o]n or about November 1, 2018 through April 13, 2019"; that Count 2 occurred "on or about November 1, 2018, through on or about May 26, 2019"; and that Count 3 occurred "[o]n or about August 14, 2019[.]"

§ 3D1.2(c), which requires grouping "[w]hen one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the Guideline applicable to another of the counts." The PSR then calculated McGavitt's Guideline range of imprisonment using U.S.S.G. § 2G2.1, the Guideline applicable to the sexual exploitation count, because it produced "the highest offense level in the group."

McGavitt's base offense level of 32 under § 2G2.1 was enhanced by 17, as follows: two levels because MV1 was over 12 and under 16 years old; two levels because the offense involved the commission of a sexual act or sexual contact; two levels for knowingly engaging in distribution; four levels because the offense involved material that portrayed sadistic, masochistic, or other violent conduct; two levels for using a computer or interactive computer service; and five levels for engaging in a pattern of prohibited sexual conduct. Three levels were subtracted for McGavitt's acceptance of responsibility; another three levels were then subtracted to reduce his total offense level to 43, the maximum offense level under the Guidelines. *See* U.S.S.G. Ch. 5, Pt. A cmt. n.2.

McGavitt objected that (1) the two-level enhancement for sexual contact, the four-level enhancement for sadistic or masochistic content, and the five-level enhancement for engaging in a pattern of prohibited sexual conduct were factually unsupported; and (2) the district court should not consider allegations from the unadjudicated Texas complaint at sentencing. The district court overruled his objections and sentenced him to concurrent terms of life, 360 months, and 120 months of imprisonment on each respective count, followed by concurrent 15-year terms of supervised release. McGavitt filed a timely notice of appeal.

## II.

This court "review[s] the district court's interpretation and application of the Guidelines *de novo*, and its factual findings for clear error." *United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (per curiam). However, "[w]hen a defendant objects to his sentence on grounds different from those raised on appeal, we review the new arguments raised on appeal for plain error only." *United States v. Medina-Anicacio*, 325 F.3d 638, 643 (5th Cir. 2003). Reviewing for plain error

> consists of four prongs: (1) there must be an error; (2) the error must be clear or obvious, rather than subject to reasonable dispute; (3) the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the district court proceedings; and (4) the court must decide in its discretion to correct the error because it seriously affects the fairness, integrity or public reputation of judicial proceedings.

*United States v. McClaren*, 13 F.4th 386, 413 (5th Cir. 2021) (internal quotation marks and citation omitted).

## III.

### A.

McGavitt first asserts that the district court erred by applying a four-level enhancement under § 2G2.1(b)(4)(A). His objection on this point was preserved, so we review de novo. *See United States v. Nesmith*, 866 F.3d 677, 679 (5th Cir. 2017).

Section 2G2.1(b)(4)(A) provides for a four-level sentencing enhancement when the "offense involved material that portrays . . . sadistic or masochistic conduct or other depictions of violence." For the enhancement to apply, an image must "depict[] conduct that an objective observer would perceive as causing the victim in the image physical or

emotional pain contemporaneously with the image's creation." *Nesmith*, 866 F.3d at 681. Our objective-observer inquiry "focus[es] on an observer's view of the image—what is portrayed and depicted—rather than the viewpoint of either the defendant or the victim." *Id.* at 680.

This court has found that the enhancement "is warranted when the sexual act depicted is likely to cause pain in one so young." *United States v. Lyckman*, 235 F.3d 234, 238 (5th Cir. 2000) (internal quotation marks and citation omitted). Specifically, we have upheld the enhancement in cases involving images of a child in bondage, *United States v. Kimbrough*, 69 F.3d 723, 734 (5th Cir. 1995), images "showing anal and vaginal penetration of minors through the use of sexual devices," *United States v. Canada*, 110 F.3d 260, 264 (5th Cir. 1997) (per curiam), and images "depict[ing] the physical penetration of a young child by an adult male," *Lyckman*, 235 F.3d at 240. And we have "twice upheld application of the enhancement where a young child was forced to orally copulate a parent on grounds that such conduct would humiliate and degrade the victim." *United States v. Tanaka*, No. 20-50171, 2021 WL 3355007, at *3 (5th Cir. Aug. 2, 2021) (per curiam) (unpublished) (citing *United States v. Cloud*, 630 F. App'x 236, 237–39 (5th Cir. 2015) (per curiam); *United States v. Comeaux*, 445 F. App'x 743, 745 (5th Cir. 2011) (per curiam)).

According to the PSR, the video in this case shows a child, age 12 or 13, lying completely nude, penetrating herself with a plastic hairbrush handle. Considering the standard articulated in *Nesmith* and the examples listed above, we conclude that an objective observer would perceive the conduct depicted in the video at issue "as causing [MV1] physical or emotional pain contemporaneously with the image's creation." *Nesmith*, 866 F.3d at 681. In so concluding, we underscore that the characteristics of the video—e.g., MV1's age and the object used—warrant application of § 2G2.1(b)(4)(A) in this case, rather than any per se rule applicable to self-penetration cases. *Cf.*

*United States v. Starr*, 533 F.3d 985, 1001–02 (8th Cir. 2008) (adopting a per se approach). We therefore find no error in the district court's application of the enhancement in this instance.

## B.

McGavitt next contends that the district court erred by applying a two-level enhancement under § 2G2.1(b)(3) for distribution of child pornography. Because he failed to object to the distribution enhancement before the district court, we review his unpreserved claim for plain error. *See United States v. Pittsinger*, 874 F.3d 446, 451 (5th Cir. 2017).

Under § 2G2.1(b)(3), a defendant is subject to a two-level enhancement if he "knowingly engaged in distribution." Application Note 1 of the Guideline defines distribution as "any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor." § 2G2.1(b)(3), cmt. n.1. Distribution "does not include the mere solicitation of such material by a defendant." *Id.* Application Note 3 further provides that "the defendant 'knowingly engaged in distribution' if the defendant (A) knowingly committed the distribution, (B) aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution, or (C) conspired to distribute." *Id.* cmt. n.3.

McGavitt admitted that he coerced MV1 to produce child pornography and then send it "through [Facebook] to his cellular telephone." From this, the district court concluded that McGavitt "knowingly engaged in distribution of child pornography (including aiding, abetting, inducing and willfully causing distribution)," and enhanced his sentence pursuant to the Guideline. McGavitt maintains that the district court erred in doing so because his conduct constituted "mere solicitation." He emphasizes that "there was no evidence that [he] transferred images of

the sexual exploitation of a minor to another person or otherwise made them available for public viewing." But even assuming an error, McGavitt must establish that the error was "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009).

As a whole, Section 2G2.1's text and relevant commentary support the district court's application of the enhancement. The court found that the principal act of distribution was MV1 taking and sending pornographic images and videos to McGavitt's cellular telephone through Facebook. Though this was done by MV1, not McGavitt, it nonetheless appears to fall under Application Note 1's broad definition of distribution as "any act, including . . . production, transmission . . . and transportation, related to the transfer of material involving the sexual exploitation of a minor." § 2G2.1(b)(3), cmt. n.1. Because these images were produced and distributed to McGavitt *at his request*, the district found that McGavitt "knowingly engaged in distribution of child pornography (including aiding, abetting, inducing and willfully causing distribution)." This finding tracks the language of Application Note 3, which states that "the defendant 'knowingly engaged in distribution' if the defendant . . . aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution . . . ." *Id.* cmt. n.3.

While there is arguably some conflict between Application Note 1's exclusion of "mere solicitation," upon which McGavitt relies, and Application Note 3's various inclusions, that tension only demonstrates that any error here is "subject to reasonable dispute." *Puckett*, 556 U.S. at 135. In this circuit, a "lack of binding authority is often dispositive in the plain error context." *United States v. Gonzalez*, 792 F.3d 534, 538 (5th Cir. 2015); *see also United States v. Bishop*, 603 F.3d 279, 281 (5th Cir. 2010) ("An error is not plain 'unless the error is clear under current law.'") (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). "[E]ven where an argument

merely requires extending existing precedent, the district court's failure to do so cannot be plain error." *Jimenez v. Wood Cty., Tex.*, 660 F.3d 841, 847 (5th Cir. 2011). Though we have found, for example, that "making the images available to others constitutes distribution[,]" *United States v. Richardson*, 713 F.3d 232, 235 (5th Cir. 2013), this court has not previously considered whether a defendant's coercing a minor to take and send images of child pornography qualifies as "distribution" under § 2G2.1(b)(3) and its relevant commentary.[3] In that light, McGavitt "has failed to show that the district court's error, if any, was plain." *See Bishop*, 603 F.3d at 281.

And even if he demonstrated a clear or obvious error on this point, McGavitt cannot show that it affected his substantial rights. To satisfy the third prong of plain-error review, McGavitt "must show 'a reasonable probability that, but for the district court's misapplication of the Guidelines, he would have received a lesser sentence.'" *United States v. Islas-Saucedo*, 903 F.3d 512, 520 (5th Cir. 2018) (quoting *United States v. Martinez-Rodriguez*, 821 F.3d 659, 663–64 (5th Cir. 2016)). The other two challenged enhancements, which we affirm, raised McGavitt's total offense level from 38 to 44. The distribution enhancement raised it to 46. Removing that two-level enhancement, thereby reducing the total offense level from 46 to 44, would still result in the Guidelines maximum total offense level of 43. McGavitt thus cannot show that any error in applying the § 2G2.1(b)(3) enhancement affected his substantial rights. *See United States v. Nava*, 957

---

[3] McGavitt asserts that *United States v. King*, 979 F.3d 1075 (5th Cir. 2020) is on point, but the *King* court explicitly declined to reach the merits of the distribution issue. *See King*, 979 F.3d at 1083. To the extent that it did, the court merely stated in dicta that the facts before it—i.e., a defendant's transfer of child pornography from his cell phone to his flash drive—were unlike other cases where images were transferred to a third party or otherwise made available for public viewing. *Id.* at 1083 n.3.

F.3d 581, 589 (5th Cir. 2020) (finding no effect on substantial rights where correction "would still result in a total offense level of 43").

## C.

McGavitt next challenges his two-level enhancement under § 2G2.1(b)(2)(A) for the commission of a sexual act or sexual contact. He asserts that (1) there is no evidence that his sexual contact with MV1 was for the purposes of, during, or in preparation for the production of child pornography; and (2) the enhancement amounts to improper double-counting. Because McGavitt's objections in the district court would not have alerted the court to these assertions of error,[4] we review for plain error only. *See Pittsinger*, 874 F.3d at 450–51.

Section 2G2.1(b)(2)(A) provides for a two-level enhancement when the offense involved "the commission of a sexual act or sexual contact." The enhancement applies "whenever sexual contact (or sexual acts) can be considered relevant conduct to the offense of conviction." *United States v. King*, 979 F.3d 1075, 1083 (5th Cir. 2020). "Relevant conduct" is defined as "all acts and omissions committed . . . by the defendant . . . during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection of responsibility for that offense[.]" U.S.S.G. § 1B1.3(a)(1)(A).

McGavitt pled guilty to Count 2, which charged that from approximately November 1, 2018, until May 26, 2019, he sexually exploited

---

[4] Before the district court, McGavitt objected to the sexual act or sexual contact enhancement on the sole ground that he "never engaged in sexual intercourse with [MV1]." The district court overruled that objection and McGavitt does not challenge the court's contrary finding on appeal. Instead, he argues, for the first time, that the enhancement was improper because the alleged sexual intercourse was not "relevant conduct" with respect to the sexual exploitation count.

MV1, by coercion and enticement, for the purpose of producing child pornography. The district court used Count 2 as the offense of conviction, and enhanced McGavitt's sentence under § 2G2.1(b)(2)(A) on the ground that he drove to Arkansas in April of 2019 and engaged in "sexual intercourse with MV1, which is considered an act of rape." McGavitt does not challenge the district court's finding that he had intercourse with MV1 or that such conduct constituted "a sexual act or sexual contact"; rather, he asserts that "[t]here is no evidence that sexual intercourse took place for the production of child pornography, during the production of child pornography, [or] in preparation for the production of child pornography[.]"

The district court did not plainly err in applying the § 2G2.1(b)(2)(A) enhancement. According to the indictment, the sexual exploitation offense occurred "[f]rom on or about November 1, 2018, through on or about May 26, 2019[.]" The record contains MV1's statement that on April 11, 2019, McGavitt showed up at her church and home and engaged in sexual intercourse with her. Following that encounter, MV1 produced and sent at least three pornographic images at McGavitt's behest. This sequence of events supports a finding that McGavitt committed the "sexual act or sexual contact" at issue "during the commission of" or "in preparation for" his sexual exploitation of MV1, U.S.S.G. § 1B1.3(a)(1)(A), as he demanded that MV1 continue sending him explicit images of herself after he had intercourse with her.

McGavitt also contends that the district court's sexual intercourse finding was connected to his conviction for coercion and enticement for the purpose of rape (i.e., Count 1), so applying an adjustment for that conduct under § 2G2.1, the Guideline for sexual exploitation of a child (i.e., Count 2), amounts to improper double counting. For support, McGavitt cites § 3D1.2, cmt. n.5, which discusses the grouping of counts under § 3D1.2(c). The commentary explains "that when conduct that represents a separate

count . . . is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor." U.S.S.G. § 3D1.2, cmt. n.5. This grouping is designed to "prevent[] 'double counting' of offense behavior." *Id.*

Here, the district court grouped Counts 1 and 2 together pursuant to § 3D1.2(c) because the rape conduct underlying Count 1 was "treated as a specific offense characteristic in, or other adjustment to, the [G]uideline applicable to" Count 2. This was nothing more than a straightforward application of § 3D1.2 and its relevant commentary. In fact, by grouping Counts 1 and 2, the district court did exactly what McGavitt complains it failed to do—it prevented double counting of offense behavior. McGavitt's double counting argument is thus without merit.

## D.

Finally, McGavitt challenges the district court's application of the Guidelines grouping rules. He asserts that the court erred by selecting Count 2 as the "highest offense level," and thus the offense level applicable to the group, without first determining the offense levels of the other counts in the group (Counts 1 and 3). Because McGavitt failed to preserve this argument, we review for plan error. *See Pittsinger*, 874 F.3d at 450–51.

Under "the [G]uidelines, a court should first determine the base level for an offense, then apply any appropriate specific offense characteristics or enhancements." *United States v. Dickson*, 632 F.3d 186, 190 (5th Cir. 2011) (citing U.S.S.G. § 1B1.1(a)). The court should repeat those steps for each count of conviction. U.S.S.G. § 1B1.1(a)(4). "Next, if necessary, the court should group the various counts according to § 3D and adjust accordingly." *Dickson*, 632 F.3d at 190. Where, as here, counts are grouped together pursuant to § 3D1.2(a)–(c), "the offense that produces the highest total

offense level, not the highest base offense level, sets the level for the group." *Id.* at 191; *accord* U.S.S.G. § 3D1.3(a) and cmt. n.2.

It is unclear from the record whether the district court applied specific offense characteristics or enhancements to each count before grouping them together and determining the highest offense level in the group. Though the PSR states that "Count 2 results in the highest offense level and becomes the count for the group," it does not include offense-level calculations (i.e., base offense level + enhancements – reductions) for Counts 1 and 3. But even assuming the district court erred by either misapplying the grouping rules or simply failing to show its work, McGavitt's argument on this point lacks merit.

Because we affirm the four-level § 2G2.1(b)(4)(A) enhancement and the two-level § 2G2.1(b)(2)(A) enhancement, and discounting *arguendo* the distribution enhancement under § 2G2.1(b)(3), the total offense level for Count 2 would be 44. If McGavitt is correct that one of the other two counts would have resulted in a higher total offense level after adjustment, and therefore should have been used instead of Count 2, the district court's failure to compute his Guidelines range of imprisonment using an *even higher* offense level would not have prejudiced him. Because McGavitt's total offense level would have been the same (the Guidelines maximum of 43), he cannot show that any error in the district court's grouping calculations affected his substantial rights. *See Nava*, 957 F.3d at 589.

## IV.

We discern no reversible error in the district court's application of the four-level § 2G2.1(b)(4)(A) sentencing enhancement under this court's precedent. We find no plain error with regard to the district court's application of the § 2G2.1(b)(3) enhancement, the § 2G2.1(b)(2)(A)

No. 20-20575

enhancement, or the Guidelines grouping rules.  The sentence imposed by the district court is

AFFIRMED.