# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 13, 2025

Lyle W. Cayce
Clerk

No. 23-20389
consolidated with
No. 23-20609

United States of America,

*Plaintiff—Appellee*,

*versus*

Giovanny Xavier Limon,

*Defendant—Appellant*.

_____

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CR-488-1

_____

Before Higginson, Willett, and Engelhardt, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:

Defendant–Appellant Giovanny Limon was convicted of sex trafficking of a minor following a jury trial. He raises four sentencing challenges on appeal, three of which concern his sentencing substantively, and one of which concerns a clerical error in the judgment. For the reasons explained below, we AFFIRM the district court's sentence of Limon on the first three issues and REMAND for the district court to correct the amended judgment to comport with its oral pronouncement.

23-20389
c/w No. 23-20609

I

In the spring of 2022, the victim ("Minor Victim 1") ran away from home and traveled to Houston, where she met Limon, whom she knew as "Ace." Minor Victim 1 began staying with Limon, who, despite knowing Minor Victim 1 was 15 years old, repeatedly had sex with her against her will and supplied her with drugs. Limon pressured Minor Victim 1 into sex work, setting up a meeting for Minor Victim 1 with two sex workers so they could show her how to dress and act. Limon arranged for provocative photographs to be taken of Minor Victim 1 dressed in lingerie, and for those photos to be used in internet ads soliciting people to pay to have sex with Minor Victim 1. The ads listed Limon's contact information for responses and were used to set up "dates" for paid sex with Minor Victim 1. Minor Victim 1 had sexual encounters with several people in exchange for money. Limon remained close during each encounter, after which Minor Victim 1 gave him the money she made. Limon used the cash he got from Minor Victim 1 to pay for hotel rooms, drugs, food, and gas. Limon kept a knife in his car, and as time passed, Minor Victim 1 grew fearful of him, as he frequently yelled at her and monitored her phone use.

Eventually, Minor Victim 1 called her family for help. Limon agreed to take Minor Victim 1 to a hotel, where she would be picked up by her family, on the condition that she not tell anybody that he had sex with her and trafficked her. Minor Victim 1's father picked her up from the hotel, and her family took her to the hospital for a forensic examination, during which Minor Victim 1 said that she felt "hopeless," "dead," "disgusted," and like her "whole life had just been taken." Minor Victim 1 expressed suicidal ideation to the nurse who conducted the exam, after which the hospital ensured she was accompanied at all times by a member of the hospital staff. Minor Victim 1 stayed at the hospital for three days, and her mother accompanied her.

Minor Victim 1's mother testified that, even after leaving the hospital, Minor Victim 1 continued to be afraid to be alone and felt unsafe in public.

A federal grand jury returned an indictment charging Limon with one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a), (b), and (c). Following a three-day trial, a jury found Limon guilty and found that Minor Victim 1 was under the age of eighteen and that the offense involved the use of force, threats of force, fraud, or coercion.

Using the 2023 Sentencing Guidelines, the presentence investigation report (the "PSR") identified Limon's base offense as 34 pursuant to U.S.S.G. § 2G1.3(a)(1) and his total offense level as 43 based on various adjustments under the Guidelines. The PSR further calculated Limon's criminal history score as 13, giving him a criminal history category of VI. The resulting Guidelines sentencing range was life imprisonment, with a statutory mandatory minimum term of fifteen years.

Both parties filed objections to the PSR and sentencing memoranda. The government sought a life sentence, while Limon requested 300 months. Limon also submitted eight character letters. Minor Victim 1, her mother, and her grandmother each submitted victim-impact statements.

At sentencing, the district court acknowledged that Limon's Guidelines range was life imprisonment but concluded that "a slight variance is appropriate in this case" and sentenced Limon to 480 months of imprisonment, followed by ten years of supervised release. The court also stated its intent to order restitution but deferred its determination of the amount at the parties' request.

The district court conducted a restitution hearing several months later. The government submitted a "Restitution Calculation Chart," setting out the losses that justified the government's request for a total of $13,540.01 in restitution. As relevant to this appeal, the chart included: (1) Minor Victim

1's mother's loss of $210 based on her lost wages during the three days she spent with Minor Victim 1 in the hospital; and (2) the mother's request for $500 to reimburse her "for repurchasing clothes, shoes, and undergarments for her daughter." At the restitution hearing, the government clarified that the $500 was actually an estimate of the amount Minor Victim 1's mother had spent to purchase hoodies for her daughter. The government explained that Minor Victim 1 was afraid to leave the house because she felt like everyone was looking at her, so the hoodies allowed Minor Victim 1 to cover herself and feel safer in public. Limon objected to those requests, arguing that the applicable restitution statute, 18 U.S.C. § 1593, does not authorize lost wages incurred by Minor Victim 1's mother and that there was no evidence that the hoodies were purchased pursuant to any sort of medical necessity.

The district court overruled Limon's objections and ordered him to pay the full amount of restitution set out in the government's chart. The court entered an amended judgment reflecting the restitution award. Limon timely appealed from the original judgment and the amended judgment containing the restitution order.[1]

## II

Limon makes four arguments on appeal. First, he argues the district court erred by not striking, sua sponte, portions of Minor Victim 1's victim-impact statement. Second, Limon maintains the district court exceeded its statutory authority in the restitution order by ordering Limon to pay $210 for lost wages incurred by Minor Victim 1's mother. Third, he contends the district court also exceeded its statutory authority by ordering Limon to pay

---

[1] Limon had previously filed a pro se notice of appeal on August 9, 2023, before his sentencing proceeding. This appeal was docketed in our court as Case No. 23-20389 and later consolidated with Case No. 23-20609.

$500 to reimburse Minor Victim 1's mother for clothing that she purchased for the victim to help her feel safer in public after she was trafficked. And finally, Limon asserts the district court's written amended judgment contains a clerical error that is inconsistent with the court's oral pronouncement.

## A

Limon first argues that the district court erred at sentencing by considering the entirety of Minor Victim 1's victim-impact statement, which Limon asserts included "irrelevant, inflammatory remarks about (or directed at)" Limon. Limon acknowledges that he failed to raise this issue in the district court, and his challenge on appeal is therefore subject only to plain-error review. *Puckett v. United States*, 556 U.S. 129, 135 (2009). To demonstrate plain error, Limon "must show a clear or obvious legal error that affects his substantial rights" and that "seriously affect[s] the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Suarez*, 879 F.3d 626, 630 (5th Cir. 2018) (alteration in original) (quoting *Puckett*, 556 U.S. at 135).

The parties agree that the "only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution." *Concepcion v. United States*, 597 U.S. 481, 494 (2022). The parties also agree that Congress has provided that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," 18 U.S.C. § 3661, and that a crime victim has the "right to be reasonably heard" at sentencing, *Id.* § 3771(a)(4).

Still, Limon asserts that the district court plainly erred "when it received and considered the entire victim impact statement" because it

5

included "irrelevant, inflammatory remarks." Specifically, Limon takes issue with three statements: (1) "There was a time I could have hurt you and robbed you of everything you owned, but taking your life would have been a favor and I'd be the one behind bars."; (2) "Do you, Ace, know what it's like to be paranoid every single day and scared to let anyone love you or touch you? Or to feel worthless like there's something more you could have or should have done? You're a selfish, disgusting, manipulative titty baby, so I bet you don't."; and (3) "Boy I've been waiting for this day. To spit on you how you spit on me." Limon contends the district court erred by failing to "say that it would disregard, or give less weight to, any of the remarks."

Limon fails to demonstrate clear or obvious error. The Supreme Court has explained that "[v]ictim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991). "In the majority of cases, . . . victim impact evidence serves entirely legitimate purposes," unless it "is so unduly prejudicial that it renders the [proceeding] fundamentally unfair." *Id.*

Limon argues the statements were inadmissible because they were irrelevant. But, as explained in *Payne*, the relevance of a victim-impact statement is that it "inform[s] the sentencing authority about the specific harm caused by the crime in question." *Id.* Here, the district court reasonably could have concluded that the statements were relevant as evidence of the effect of Limon's crime on Minor Victim 1. As the government notes in its brief, Minor Victim 1's "strong negative feelings toward Limon and [her] desire for . . . retribution [are] unsurprising," given the "unimaginable trauma" she suffered as a "child victim of [Limon's] sex trafficking." It was not unreasonable for the district court to consider her entire victim-impact

statement as relevant, and not unduly prejudicial, evidence of this trauma and her feelings.

Moreover, Limon identifies no precedent to support his contention that the district court should have struck portions of Minor Victim 1's statement sua sponte. "In this circuit, a 'lack of binding authority is often dispositive in the plain error context.'" *United States v. McGavitt*, 28 F.4th 571, 577 (5th Cir. 2022) (quoting *United States v. Gonzalez*, 792 F.3d 534, 538 (5th Cir. 2015)); *see also United States v. Bishop*, 603 F.3d 279, 281 (5th Cir. 2010) ("An error is not plain 'unless the error is clear under current law.'" (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993))). Limon cites JUSTICE O'CONNOR's reiteration of *Payne*'s general rule that victim-impact evidence "may in some cases be unduly inflammatory," *Payne*, 501 U.S. at 831 (O'CONNOR, J., concurring), but he makes no effort to analogize to the facts of any case where this court (or any court) rejected victim-impact evidence as unduly inflammatory. By failing to point to any binding authority, Limon falls short of establishing a clear or obvious error by the district court.

Limon's failure to satisfy the first and second plain error prongs—that there is an error, and such error is clear—is alone dispositive, but he also fails to establish the third prong, that the purported error affected his fundamental rights. "To affect the defendant's substantial rights, the defendant must demonstrate that the error affected the outcome of the district court proceedings." *United States v. Broussard*, 669 F.3d 537, 553 (5th Cir. 2012). "In the sentencing context, we often ask whether the error increased the term of a sentence, such that there is a reasonable probability of a lower sentence on remand." *United States v. Garcia-Quintanilla*, 574 F.3d 295, 304 (5th Cir. 2009).

Here, there is little evidence as to what weight, if any, the district court gave to Minor Victim 1's victim-impact statement. As the government

observes, the district court was fully aware of Limon's offense conduct, none of which Limon disputes on appeal.  Additionally, the district court did not discuss the substance of Minor Victim 1's statement, while it did explicitly consider the countervailing character letters from Limon's family and friends, supporting the inference that Minor Victim 1's statement did not play a substantial role in the district court's sentencing determination.  Limon does not articulate how striking Minor Victim 1's challenged comments would have meaningfully altered the district court's view such that it would have imposed a sentence that was even lower than the below-Guidelines sentence it imposed here.  *Cf. United States v. Bernard*, 299 F.3d 467, 481 (5th Cir. 2002)  ("Taken in context, [the] inadmissible portion of the victim impact testimony was short and mild compared to the horror of the crimes and the pathos of the admissible impact on the parents [of each of the murder victims]."); *Payne*, 501 U.S. at 832 (O'CONNOR, J., concurring) ("I do not doubt that the jurors were moved by this [victim impact] testimony—who would not have been?  But surely this brief statement did not inflame their passions more than did the facts of the crime[.]").  Limon therefore has not demonstrated any effect on his fundamental rights.

Because Limon has failed to meet multiple plain-error prongs, we hold that the district court did not plainly err by failing to strike, sua sponte, the challenged portions of Minor Victim 1's victim-impact statement.

B

Next, Limon challenges the $210 of restitution ordered for lost wages that Minor Victim 1's mother incurred during the three days she spent at the hospital with Minor Victim 1 following her release from Limon.  Restitution based on Limon's conviction under 18 U.S.C. § 1591 is covered by the mandatory restitution provisions of the Trafficking Victims Protection Act in 18 U.S.C. § 1593.  *See* 18 U.S.C. § 1593(a) ("Notwithstanding section 3663 or

3663A, . . . the court shall order restitution for any offense under this chapter."). Section 1593(b)(1) provides that the "order of restitution under this section shall direct the defendant to pay the victim . . . the full amount of the victim's losses, as determined by the court under paragraph (3) of this subsection." *Id.* § 1593(b)(1). Paragraph 3 then provides: "As used in this subsection, the term 'full amount of the victim's losses' has the same meaning as provided in section 2259(c)(2) . . . ."[2] *Id.* § 1593(b)(3).

Limon's challenge centers on the definition of "victim." Section 1593 defines "victim" as follows:

> As used in this section, the term 'victim' means the individual harmed as a result of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or a representative of the victim's estate, or another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named such representative or guardian.

*Id.* § 1593(c). Limon argues, however, that this is not the only definition of "victim" that matters. He contends that "[r]eading § 1593 in context requires reading it in tandem with § 2259" because § 1593(b)(3) incorporates by reference § 2259(c)'s definition of the term "full amount of the victim's losses." He therefore points to the definition of "victim" in § 2259:

> For purposes of this section, the term 'victim' means the individual harmed as a result of a commission of a crime under this chapter. In the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another

---

[2] Section 2259 is the restitution provision for cases involving sexual exploitation and other abuse of children. *See* 18 U.S.C. § 2259(a).

family member, or any other person appointed as suitable by the court, *may assume the crime victim's rights under this section*, but in no event shall the defendant be named as such representative or guardian.

18 U.S.C. § 2259(c)(4) (emphasis added). Limon's ultimate argument is that, taking these two definitions of "victim" together "in a manner that renders them compatible," the best understanding is that "a legal guardian, family member, or other appointed person [is allowed] to take over the crime victim's existing right to receive from the defendant the types of restitution outlined in § 2259(c)(2)."

This question of what restitution a child sex trafficking victim's mother may be entitled to receive is a matter of first impression.

The parties agree that, because Limon does not dispute that Minor Victim 1's mother lost $210 in wages, but rather argues that her lost wages are not recoverable under the statutory scheme, this challenge is reviewed de novo. *See United States v. Mathew*, 916 F.3d 510, 515 (5th Cir. 2019).[3] "When interpreting statutory language, words are given their ordinary, plain meanings, and language must be enforced unless ambiguous." *United States v. Moore*, 71 F.4th 392, 395 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 551 (2024) (mem.). Still, "text should never be divorced from context," which "can mean both the immediate clause and the broader context of the statute as a whole." *Id.* (cleaned up). From there, "[s]tatutory history . . . can also

---

[3] We note that it is not entirely clear that Limon preserved this argument as presented on appeal. Before the district court, Limon made no reference to § 2259(c)(4) and instead focused on the language of § 1593(c) and whether Minor Victim 1's mother qualified as a victim. Nonetheless, the government does not advance this argument and agreed to de novo review of this issue, so we proceed to the merits. Regardless, Limon does not carry his burden even on de novo review.

provide helpful context," and, "[i]f applicable, canons of construction can be used to resolve remaining ambiguity." *Id.* (citations omitted).

As noted, § 1593 includes its own definition of "victim," *see* 18 U.S.C. § 1593(c), and Limon acknowledges that Minor Victim 1's mother would be a victim under the plain language this definition. Thus, under § 1593(b)(1), Minor Victim 1's mother is entitled to restitution for the "the full amount of [her] losses." To define the "full amount of the victim's losses," § 1593(b)(3) cross-references § 2259(c)(2), which provides that this term includes:

> any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim, . . . including—
>
> (A) medical services relating to physical, psychiatric, or psychological care;
>
> (B) physical and occupational therapy or rehabilitation;
>
> (C) necessary transportation, temporary housing, and child care expenses;
>
> (D) lost income;
>
> (E) reasonable attorneys' fees, as well as other costs incurred; and
>
> (F) any other relevant losses incurred by the victim.

*Id.* § 2259(c)(2). Under the plain language of this section, the only limitation on Minor Victim 1's mother's ability to recover lost income is that she must have incurred the loss "as a proximate result" of Limon's offense. Limon does not dispute that Minor Victim 1's mother incurred three days of lost income as a proximate result of his offense.

The plain language therefore favors the government's position. However, as discussed above, Limon contends that the court must also cross-reference § 2259's own definition of victim, *see id.* § 2259(c)(4), and that in light

of § 2259(c)(4), Minor Victim 1's mother may only recover Minor Victim 1's losses, not her own losses. Limon cites Fifth Circuit caselaw for the fundamental propositions that, "if possible, [the court] interpret[s] provisions of a statute in a manner that renders them compatible, not contradictory," and that "in cases where statutes are *in pari materia* ('in a like matter'), they should be interpreted harmoniously."[4] But he does not explain how the government's view is contradictory. And perhaps most importantly, he fails to identify any Fifth Circuit law that supports his view that § 1593's incorporation of § 2259's definition of the "full amount of the victim's losses" requires § 1593 to *also* incorporate § 2259's definition of "victim," despite § 1593 already having a "victim" definition of its own.

Both parties highlight that the definition of "victim" in § 2259 used to be nearly identical to the current definition in § 1593 but was amended in 2018. *See* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, § 3(b), 132 Stat. 4383, 4385 (2018). According to Limon, this change is evidence that Congress did not intend for legal guardians or family members of child victims to be able to recover their own losses. According to the government, it is instead evidence that the definition in § 1593 was intentional and is the proper definition to follow in this instance. The government contends that Congress chose *not* to amend § 1593's definition of victim as it did § 2259's definition, while—in the same act—it added to § 1593 the cross-reference to § 2259's definition of the "full amount of the victim's losses." For further support, the government notes that the Trafficking Victims Protection Act, which includes § 1593, defines "victim of trafficking" as a separate term of art for the person subjected to sex trafficking

---

[4] Limon first quotes *Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013), and then quotes *Nat'l Ass'n of Priv. Fund Managers v. Sec. & Exch. Comm'n*, 103 F.4th 1097, 1111 (5th Cir. 2024).

and that Congress therefore "could have purposely limited mandatory restitution under § 1593 to the person subjected to sex trafficking by using" that defined term instead of "victim" but declined to do so.

Moreover, as the government argues, Limon's interpretation contradicts the rule against surplusage, a well-established canon of statutory interpretation, which provides that courts are "obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). Under Limon's approach, a district court must use § 2259's definition of "victim" when determining the "full amount of the victim's losses" under § 1593, which renders § 1593's own definition of "victim" effectively meaningless. Limon's response is that § 2259's definition of "victim" provides the "broader context that gives meaning to the definition in § 1593(c)." But this is a distinction without a difference. If each use of "victim" in § 1593 requires importing § 2259's more limited definition of "victim," the inclusion of a § 1593-specific definition would be superfluous. Such a reading is untenable. *See Pulsifer v. United States*, 601 U.S. 124, 143 (2024) ("When a statutory construction renders an entire subparagraph meaningless, this Court has noted, the canon against surplusage applies with special force." (cleaned up)).

The two out-of-circuit cases that Limon cites do not change our conclusion. In *United States v. Casados*, the Tenth Circuit considered whether the Mandatory Victims Restitution Act (MVRA) of 1996, 18 U.S.C. § 3663A, permitted the victim's representative to substitute his own expenses for the victim's losses to recover transportation expenses incurred to attend proceedings related to the offense. 26 F.4th 845, 847–49 (10th Cir. 2022). Unlike § 1593, § 3663A defines "victim" in the same way as § 2259, such that it directs that a legal guardian "may assume the victim's rights." 18 U.S.C. § 3663A(a)(2). The Tenth Circuit held that "the phrase 'assume the victim's rights' does not permit a victim's representative to transform the MVRA from a victim-compensation statute into a vehicle for reimbursing the

13

representative's own expenses." *Casados*, 26 F.4th at 852. Although this case could potentially offer persuasive authority as to whether Minor Victim 1's mother can recover her lost wages under § 2259, it does not speak to her ability to recover under § 1593, whose definition of "victim" lacks the "may assume" language.

The other case Limon cites, *United States v. Wilcox*, 487 F.3d 1163 (8th Cir. 2007), is also inapposite. There, the Eighth Circuit considered, in relevant part, whether a minor victim's mother could recover her own lost wages as a "victim" under a former version of § 3663A(b)(2)(C). *Wilcox*, 487 F.3d at 1176–78. The court answered in the negative because of specific limiting language that existed in § 3663A at the time but does not appear in § 1593:

> While the statute defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered," [18 U.S.C.] § 3663A(a)(2), the subsection concerning reimbursement for lost income refers to a specific victim: "In the case of an offense resulting in bodily injury *to a victim* the defendant shall reimburse *the victim* for income lost *by such victim* as result of such offense." 18 U.S.C. § 3663A(b)(2)(C) (emphases added). The use of the definite article indicates that "*the* victim" who may be reimbursed is the victim described at the beginning of the subsection—that is, the victim who suffered bodily injury.

*Id.* at 1176 (alterations adopted). In contrast, neither § 1593, nor § 2259, contains that critical limiting language.

In this case, the plain language of the statute allows for Minor Victim 1's mother to recover the $210 in lost wages awarded by the district court. That is not to say that a minor victim's guardian will always be able to recover for their own losses. The government still must demonstrate that their losses are the proximate result of the defendant's offense conduct. 18 U.S.C. § 2259(c)(2) (defining "full amount of the victim's losses" to include "any

costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a *proximate result* of the offenses" (emphasis added)); *see id.* § 1593(b)(3) (incorporating § 2259(c)(2) by reference); *cf. Paroline v. United States*, 572 U.S. 434, 448 (2014) ("Restitution is therefore proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses."). Limon, however, does not contest proximate causation.

For the reasons above, we hold that the district court did not exceed its statutory authority under 18 U.S.C. § 1593 by ordering Limon to pay $210 in restitution for lost wages incurred by Minor Victim 1's mother.

C

Limon also argues that district court exceeded its statutory authority by ordering $500 in restitution to reimburse Minor Victim 1's mother for hoodies that she purchased for her daughter to help her feel safer in public in the aftermath of her trauma caused by Limon. As Limon raised this argument below and because his challenge is to the order's legality, we review it de novo. *See Mathew*, 916 F.3d at 515.

Limon provides little support for this challenge. Across both of his briefs, Limon cites only one case in support of this position, *United States v. Villalobos*, 879 F.3d 169 (5th Cir. 2018). However, in *Villalobos*, we held that the district court had imposed an "illegal sentence" where it ordered $10,000 in restitution after recording the victims' losses as $0.00. *Id.* at 172. Here, Limon does not dispute that Minor Victim 1's mother spent $500 on the hoodies. Rather, he simply contends that the government "presented no evidence that these hoodies were medically necessary or prescribed by a medical professional."

But, as the government explains, the statutory scheme is not so limited. It allows victims to recoup "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of

the offenses involving the victim." 18 U.S.C. § 2259(c)(2). The statute then articulates several categories—including "medical services relating to physical, psychiatric, or psychological care"—as well as a final catchall provision for "any other relevant losses incurred by the victim." *Id.* The government notes correctly that Limon has never argued that the cost of the hoodies was not a proximate result of his offense conduct, only that there is no evidence of medical necessity. Although the government likened the hoodies to therapy during the restitution hearing, the best reading of this statement is that the government simply offered a comparison to explain why the hoodies were a relevant loss. In his reply brief, Limon takes issue with the government describing the hoodies as a "comforting mechanism," and he argues that losses awarded under § 2259(c)(2) must be "necessary." Necessity is not the standard. Section 2259(c)(2) generally requires only that the losses be incurred as a "proximate result of the offenses involving the victim," and the catchall provision only adds the additional requirement that the losses be "relevant." Limon has never disputed that the hoodie costs were "relevant" losses incurred as a "proximate result" of his offense conduct.

Because Limon has failed to demonstrate that the district court erred in overruling his objections, and in light of a plain reading of the statutory text, we again hold that the district court ruled within its statutory authority in ordering restitution for the clothing Minor Victim 1's mother purchased.

D

Finally, the parties agree that there is a clerical error in the amended judgment that should be corrected. After Limon was sentenced, the parties reconvened for a hearing on restitution. At that hearing, the district court expressed that its amended judgment would require Limon to pay fifty percent of any wages he earned in prison toward restitution and, upon his release from custody, to pay $25 per month toward any remaining balance. The

23-20389
c/w No. 23-20609

written amended judgment instead provides that "[a]ny balance remaining after release from imprisonment shall be paid in monthly installments of $100 to commence 60 days after the date of release to a term of supervision."

Rule 36 of the Federal Rules of Criminal Procedure provides that the district court "may at any time correct a clerical error in a judgment." FED. R. CRIM. P. 36. As the parties agree, Rule 36 is the normal mechanism for correcting such a scrivener's error in a written judgment. *See United States v. Escajeda*, 8 F.4th 423, 428 (5th Cir. 2021). We therefore remand to the district court solely to correct the amended judgment to conform to the oral pronouncement.

### III

For the foregoing reasons, we AFFIRM Limon's sentence and REMAND to the district court for the limited purpose of correcting the clerical error in the written amended judgment to conform to the oral pronouncement.